Peter MIRRIONE, Plaintiff-Appellant,

v.

Warren M. ANDERSON, et al., Defendants-Appellees.

No. 1212, Docket 83–6025.

United States Court of Appeals, Second Circuit.

Argued April 27, 1983.

Decided Sept. 16, 1983.

Certiorari Denied Feb. 21, 1984. See 104 S.Ct. 1308.

Peter Mirrione, pro se, plaintiff-appellant.

C. Daniel Chill, New York City, for defendant-appellee Fink.

Frederick Campbell, New York City (Patterson, Belknap, Webb & Tyler, New York City, on brief), for defendant-appellee Patterson.

Before LUMBARD, NEWMAN, and PRATT, Circuit Judges.

NEWMAN, Circuit Judge:

This is an appeal from a December 12, 1982, judgment of the District Court for the Southern District of New York (Vincent J. Broderick, Judge) dismissing plaintiff's complaint. Appellant Peter Mirrione had sought an order invalidating the 1982 New York State legislative reapportionment as applied to Queens County on the grounds that it impermissibly impaired the collective voting power of the voters of the community of Rosedale. Mirrione complained that Rosedale, whose population could have been included in a single assembly district, while maintaining substantial equality among districts, was divided into four segments, each of which was joined with other areas of Queens County to form four assembly districts. We conclude that neither federal statutes nor the Constitution assures any voter that the portion of the community in which he lives will not be separated from the rest of his community and joined with neighboring areas in the formation of an election district. We therefore affirm.

This litigation arises out of the New York State Legislature's efforts to reapportion assembly, state senate, and congressional seats following the 1980 census. In *Flateau v. Anderson*, 537 F.Supp. 257 (S.D.N.Y.), *appeal dismissed*, —— U.S. ——, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982), a statutory three-judge District Court ordered the New York State Legislature to reapportion itself in time for the 1982 election. The Legislature adopted an initial reapportionment plan on May 19, 1982. Because Bronx, Kings, and New York counties were "covered" counties within the meaning of section 4(b) of the Voting Rights Act of 1965, 42 U.S.C. § 1973b(b) (1976),[1] the plan was submitted to the Justice Department for approval as required by section 5 of the Act, 42 U.S.C. § 1973c (1976). The Justice Department, believing the proposal would unfairly dilute Black and Hispanic voting power, refused pre-clearance and rejected the plan in June 1982.

In addition, minority groups challenged the legality of this initial plan with respect to Queens County, alleging that the proposed legislative lines would dilute minority voting strength in that county, in violation of section 2 of the Act, 42 U.S.C. § 1973 (1976), and the Fifteenth Amendment. Since the Legislature was to revise the orig-

---

1. The three counties were determined to be "covered" by section 4(b) of the Voting Rights Act because a literacy test had been used in these counties prior to 1970 and less than 50 percent of the voting age residents of these counties had voted in the 1968 presidential election. *See* 35 Fed.Reg. 12,354 (1970); 36 Fed.Reg. 3809 (1971).

inal plan, the three-judge District Court did not assess the merits of these complaints; however, it cautioned the Legislature, in revising the original plan, to be equally vigilant in protecting minority voting power in Queens County as in the three covered counties. The Court noted that while pre-clearance under section 5 of the Act was not required for Queens County, the lines in that county were subject to judicial scrutiny under section 2 of the Act.

In response to the Justice Department's objections and the District Court's advice, the Legislature adopted a revised plan on July 2, 1982. The revisions amended the original plan with respect to various counties, including the County of Queens. The revised plan partitioned the unincorporated community of Rosedale, which had originally been entirely included in one state assembly district, into four separate assembly districts, joining segments of the community with adjacent communities. It is this aspect of the legislative reapportionment plan that Mirrione, a resident of Rosedale, challenged.[2]

The District Court dismissed Mirrione's complaint for failure to state a claim on which relief could be granted. Fed.R.Civ.P. 12(b)(6). The Court found no merit in Mirrione's objections that the State Legislature divided Rosedale into four assembly districts and created an assembly district with a minority population in excess of 80%. The District Court ruled that neither the Constitution nor any federal law prohibits a state legislature from fragmenting communities in the reapportionment process, or protects voters from being placed in a legislative district with a minority population in excess of 80%. A pendent state law claim was dismissed because of the failure of the federal claim.

Mirrione pursues on appeal only the claim that the purpose and effect of the revised reapportionment plan was to dilute the collective voting power of the voters of Rosedale, in violation of the Fourteenth and Fifteenth Amendments and the Voting Rights Act. He asserts a right to have his vote and those of other Rosedale voters counted as a bloc in a single assembly district and challenges the authority of the New York State Legislature to distribute the voters of his community into more than one assembly district.

█ It is well settled that there is no right to community recognition in the reapportionment process. Voting is a personal right, *Reynolds v. Sims,* 377 U.S. 533, 580–81, 84 S.Ct. 1362, 1391–1392, 12 L.Ed.2d 506 (1964), and, in the absence of invidious discrimination, voters of a city, town, or geographic or ethnic community are not entitled to be grouped together in a single election unit. In a closely analogous case, *United Jewish Organizations of Williamsburgh, Inc. v. Wilson,* 510 F.2d 512 (2d Cir.1974), aff'd on other grounds sub nom. *United Jewish Organizations of Williamsburgh, Inc. v. Carey,* 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977), this Court refused to prohibit the New York Legislature, as part of the 1974 reapportionment, from bisecting the Hasidic community of Brooklyn, New York. While recognizing that the political strength of the community would be diluted as a result of the redistricting plan, this Court held that members of a community have "no claim to being left together in one district at least absent a showing of discrimination on grounds of race or color . . . ." *Id.* at 521.

█ Appellant's attempt to distinguish *United Jewish Organizations* is unavailing. It is simply without significance whether the community seeking to remain within a single legislative district is a religious community, an imprecise geographic community like Rosedale without official governmental status, or a political subdivision of

**2.** The suit was brought against the Majority Leader of the New York State Senate, the Speaker of the New York Assembly, a special master, an official of the Civil Rights Division of the U.S. Department of Justice, and the U.S. Attorney General. Mirrione was one of several plaintiffs, but only he has pursued this appeal.

the state. In *Wells v. Rockefeller*, 281 F.Supp. 821 (S.D.N.Y.1968), *rev'd on other grounds*, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1969), a three-judge District Court unanimously rejected the claim that the Bay Ridge community of Brooklyn, New York, was unconstitutionally divided by a redistricting plan. As the Court noted, "[T]he Legislature can not be expected to satisfy ... the district preferences of all of our citizens." *Id.* at 825. *See also Wendler v. Stone*, 350 F.Supp. 838, 840–41 (S.D.Fla. 1972) (three-judge court) (per curiam) (not illegal to cross boundaries of political subdivisions where necessary or desirable); *Wolfson v. Nearing*, 346 F.Supp. 799, 803 (M.D.Fla.1972) (three-judge court) (per curiam) (voters of Town of Temple Terrace opposed to annexation by Tampa have "no right to vote as a bloc"); *Dunn v. Oklahoma*, 343 F.Supp. 320 (W.D.Okl.1972) (three-judge court) (per curiam) (fragmenting political subdivision not impermissible); *Ferrell v. Oklahoma*, 339 F.Supp. 73, 83 (W.D. Okl.) (three-judge court), *aff'd mem. sub nom. Ferrell v. Hall*, 406 U.S. 939, 92 S.Ct. 2045, 32 L.Ed.2d 328 (1972) (same); *Ince v. Rockefeller*, 290 F.Supp. 878, 879 (S.D.N.Y. 1968) (refusing to invalidate redistricting plan on grounds that it impermissibly divided the community of East Elmhurst, Queens County, New York). It is likewise irrelevant that the community of Rosedale was divided four ways, rather than two ways, or that some voters of Rosedale were included in an assembly district that might be over 80% minority, rather than over 65%, as in *United Jewish Organizations.*

We are not unmindful that the Supreme Court has identified the integrity of political subdivisions as a permissible prudential consideration justifying minimal departures from strict population equality in designing a state legislative apportionment plan, *White v. Weiser*, 412 U.S. 783, 795–97, 93 S.Ct. 2348, 2354–2355, 37 L.Ed.2d 335 (1973); *Mahan v. Howell*, 410 U.S. 315, 321–26, 93 S.Ct. 979, 983–986, 35 L.Ed.2d 320 (1973); *Reynolds v. Sims, supra*, 377 U.S. at 578–81, 84 S.Ct. at 1390–1391, but we have found no case that would make the observance of town lines or boundaries of unofficial communities a mandatory consideration under either the Voting Rights Act or the Constitution.

Finally, practical considerations militate against prohibiting the Legislature from subdividing identifiable communities in the districting process. As the Supreme Court has recognized, such a restriction would often be incompatible with the Constitutional requirement of equality of population among districts, *Kirkpatrick v. Preisler*, 394 U.S. 526, 533–34, 89 S.Ct. 1225, 1230–1231, 22 L.Ed.2d 519 (1969); *Reynolds v. Sims, supra*, 377 U.S. at 580, 84 S.Ct. at 1391, as well as with the statutory and Constitutional duties imposed on states to protect minority voting power. *White v. Regester*, 412 U.S. 755, 765–70, 93 S.Ct. 2332, 2339–2341, 57 L.Ed.2d 314 (1973) (invalidating multi-member districts designed, in part, to respect preexisting subdivisions). In addition, if plaintiff's contentions were accepted, federal courts would have to determine, without judicially manageable standards, which identifiable communities merit Constitutional protection, and to assess how the goal of community integrity, even when the community is a governmental subdivision, is to be balanced against competing concerns such as compactness, contiguity, and minority voting power. Overseeing such matters would inevitably embroil courts in the most contentious areas of political dispute.

Affirmed.