Rabbi Yitzchok LeBLANC–STERNBERG, Chanie Leblanc–Sternberg, Fred Walfish, Lewis Kamman, Park Avenue Synagogue, Inc., Plaintiffs,

v.

Robert FLETCHER, Marianne Cucolo, John C. Layne, and Nicholas Vertullo, Individually and in their capacity as Trustees of the Village of Airmont, Maureen Kendrick, Individually and in her Capacity as Mayor of the Village of Airmont, Raymond Kane, Paul Berliner, the Airmont Civic Association, the Village of Airmont, the Town of Ramapo, and Herbert Reisman, Individually and in his capacity as Ramapo Town Supervisor, Defendants.

No. 91 Civ. 2550 (GLG).

United States District Court,
S.D. New York.

Dec. 24, 1991.

Coudert Bros., New York City (Kevin W. Goering, Alan J. Straus, P. Rivka Schochet, Jeanne M. Hamburg, of counsel), for plaintiffs.

Blackburn and Rice, Suffern, N.Y. (Terry Rice, of counsel), for defendants Fletcher, Kendrick, Cucolo, Layne, Vertullo, the Airmont Civic Ass'n and Village of Airmont.

## OPINION

.GOETTEL, District Judge:

Racial and religious intolerance have long been endemic in our nation. While progress has been made during this century, these scourges have not disappeared. Newspapers daily chronicle overt acts of · hatred such as cross burnings on the lawns of black families, swastikas painted on the walls of synagogues and racial epithets flying between mobs of angry people. More subtle, but equally invidious, are actions taken in the name of community interest, protected by our political system, which draw upon the prejudices of the electorate, effectively institutionalizing the hatred and bigotry we deplore as a nation. This case presents the question of whether such intolerance led to the incorporation of a village in order to facilitate the enactment of zoning which would effectively exclude Orthodox Jews from residence.

## BACKGROUND

The Village of Airmont (the "Village" or "Airmont") encompasses approximately five square miles on the southern border of the Town of Ramapo in Rockland County, New York. Its incorporation in April 1991 is the most recent sign of a "village movement" within the Township which has apparently been animated by the desire of local residents to exert control over their immediate living area. The Town currently has eleven incorporated villages within its borders. An incorporated village controls the tax base within its boundaries and has the authority to execute its own zoning laws, run schools, operate police, fire, water and sewage departments and regulate the use of the streets.

According to the complaint, roughly 23% of the population of Ramapo is Orthodox Jewish. (The total Jewish population is substantially higher.) Because on the Jew-

ish Sabbath and on some religious holidays driving motor vehicles is prohibited for Orthodox Jews, they tend to live near their community places of worship so that they may gather to pray within safe walking distance of their homes.

Plaintiffs in this case are Orthodox Jewish residents of a development called Park Avenue Estates. The nearest Orthodox synagogue is located over a mile away but even if plaintiffs were able to safely walk that distance, they cannot join that congregation because additional membership would take the synagogue above its legal capacity. Accordingly, Rabbi Sternberg applied to the Ramapo Zoning Board for permission to establish a professional home office in a portion of his residence, where, among other uses, the Orthodox Jewish residents of his neighborhood could gather for worship. Such uses are permitted with some restrictions in the Town of Ramapo and permission was granted. It is the usage of Rabbi Sternberg's home as a place of worship for eight local families that, plaintiffs contend, lies at the heart of this suit.

The events relevant to this action began in 1986, when a group of citizens formed an organization known as the Airmont Civic Association ("ACA"). Plaintiffs allege that the express purpose behind the formation of ACA was to form a village and elect ACA members to office in order to impose strict zoning which would exclude, discourage and prevent Orthodox Jewish residential neighborhoods from developing in Airmont. All of the Airmont defendants [1] joined and were active in ACA over the course of time. Plaintiffs claim that anti-Orthodox sentiments were expressed at ACA meetings and that ACA became known as an organization dedicated to excluding Orthodox Jews from Airmont. In furtherance of that goal, plaintiffs assert

that ACA members openly opposed the formation of Jewish houses of worship in the Airmont area, publicly voiced their opposition to Orthodox Jewish families moving into the village area, and at times monitored attendance at local synagogues which the attenders reportedly found intimidating.

Around the same time that ACA became active in local matters, a group of citizens signed a petition to incorporate Airmont. ACA supported the incorporation and indeed it appears that the incorporation movement was driven by ACA and its activities. Plaintiffs allege that ACA and defendants Cucolo, Kendrick, and Layne, in concert with others, were responsible for drawing village boundaries which would further their exclusionary goal.

A hearing regarding incorporation was held on April 1, 1987 and the Ramapo Town Supervisor, defendant Herbert Reisman, approved the petition after determining that it complied with state law. After a court challenge, a referendum was held in January 1989 in which the incorporation was approved by over 70% of the voters. Another court challenge to the village's incorporation failed and the Secretary of State signed the certification of incorporation for the Village on April 10, 1991. A Village Clerk was appointed and election of village officials was scheduled for May 16, 1991. In an attempt to preempt the functioning of the village, plaintiffs filed this complaint and by order to show cause, moved for a preliminary injunction seeking to enjoin the election. *See LeBlanc–Sternberg v. Fletcher,* 763 F.Supp. 1246 (S.D.N.Y.1991).

The injunction was denied on the grounds that plaintiffs had not made an adequate showing of irreparable harm, *id.,* 763 F.Supp. at 1251–52, and the election took place as scheduled. The entire ACA

---

**1.** The Airmont defendants consist of defendants Fletcher, Cucolo, Kendrick, Layne and Vertullo who are now elected officials of Airmont and additionally includes Kane who is alleged to have been an active member of ACA. Paul

Berliner, also alleged in the second amended complaint to have been an active ACA member, has been dropped from the suit. Janice Stern, John McLaughlin, and several others were

slate of candidates was elected[2] despite two other slates of candidates being presented. No zoning laws have yet been adopted by the Village although Airmont is obligated to pass its own code by February.[3]

Before us now is a motion by defendants Kendrick, Fletcher, Kane, Cuculo, Vertullo, Layne, ACA and the Village of Airmont ("the Airmont defendants") to dismiss the second amended complaint. They argue that there is no justiciable controversy with respect to the first amendment and fair housing claims because plaintiffs lack standing and that, in any event, those claims are not ripe. They also contend that the defendants' actions are fully immunized by the first amendment and that plaintiffs have failed to state a claim upon which relief can be granted.

On a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint's claims are taken "at face value," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and dismissal is warranted only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). With these standards in mind, we turn to examine the sufficiency of the complaint.

## FIRST AMENDMENT IMMUNITY

At the outset, we must address the contention by the individual Airmont defendants and ACA that their actions in seeking incorporation of Airmont are protected by the first amendment right to "petition the Government for a redress of grievances." U.S. Const., Amend. I.

Villages are voluntary corporations organized by the action of their own inhabitants for their own local benefit. *Nassau County v. Lincer*, 165 Misc. 909, 3 N.Y.S.2d 327, *rev'd on other grounds*, 254 A.D. 746, 254 A.D. 760, 4 N.Y.S.2d 77 (1938). In New York, incorporation begins with a petition signed by local residents which contains a minimal amount of information such as the basis on which the petition is signed. N.Y. Village Law § 2–202(1)(b)(1) (McKinney 1973 and Supp.1991). After satisfaction of notice provisions, *id.* § 2–204, a hearing is held to determine the sufficiency of the petition. The Town Supervisor, within his or her discretion, determines the legal sufficiency of the petition which can then be challenged through an article 78 proceeding. *Id.* § 2–210. After approval by the Supervisor, an election is held—if the incorporation is approved by the majority of the affected residents, the state comptroller certifies the incorporation. These procedures were followed in the incorporation of Airmont.

Thus, defendants maintain that in circulating the petition, advocating for the incorporation and voting for its passage in the election, they were doing nothing more than petitioning for redress of grievances in exercise of their first amendment privileges.

■ The right to petition is fundamental to the very idea of a republican form of government. *United States v. Cruikshank*, 92 U.S. (2 Otto) 542, 552, 23 L.Ed. 588 (1875). Indeed, this right is "among the most precious of the liberties safeguarded by the Bill of Rights ... [and is] intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press." *United Mine Workers of America, District 12 v. Illinois State Bar Association*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967).

dropped as defendants upon the filing of the amended complaint.

**2.** Kendrick was elected as Mayor; Vertullo, Cucolo, Fletcher and Layne were elected to serve on the Board of Trustees.

**3.** As Airmont currently has no zoning code, it follows that of the Town of Ramapo. A moratorium on new permits has been instituted in light of the upcoming legislation. Recently, when Rabbi Sternberg applied to renew his permit for a professional home office which included the operation of a small synagogue, the permit was renewed.

■ The safeguards of the first amendment are not contingent upon the nature of the views expressed. "[T]he Constitution protects expression and association without regard to the race, creed, or political or religious affiliation of the members of the group which invokes its shield, or to the truth, popularity, or social utility of the ideas and beliefs which are offered." *N.A.A.C.P. v. Button,* 371 U.S. 415, 444–45, 83 S.Ct. 328, 344, 9 L.Ed.2d 405 (1963). *See also New York Times v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964) ("Debate on public issues should be uninhibited, robust and wide-open and . . . it may well include vehement, caustic, and sometimes unpleasantly sharp attacks."); *Weiss v. Willow Tree Civic Ass'n,* 467 F.Supp. 803, 818 (S.D.N.Y.1979) ("[People] have every right to band together for the advancement of beliefs and ideas, however unpalatable the ideas or whatever the underlying motive."). Moreover, the protection of the first amendment is available regardless of the motivation or intent underlying the speech. *Eastern Railroad Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 139, 81 S.Ct. 523, 530, 5 L.Ed.2d 464 (1964). Thus, although the plaintiffs contend that discriminatory intent underlay the Airmont defendants' petition for incorporation, the defendants suggest that such activity is nevertheless protected. In their view, the chain of events initiated by the petition of the Airmont defendants and other residents is nothing more than the democratic process resulting in the transformation of government.

■ Resort to administrative, legislative, political or judicial processes is protected by the first amendment so long as the petitioner is concerned with obtaining relief afforded by the system. *City of Columbia v. Omni Outdoor Advertising, Inc.,* —— U.S. ——, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991); *California Motor Transport. Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Noerr,* 365 U.S. 127, 81 S.Ct. 523. Even if the seeking of relief is animated by malevolence or self-interest, the first amendment protects the right to petition of the person whose activities are genuinely aimed at procuring favorable government action. *Omni,* 111 S.Ct. at 1354 (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500 n. 4, 108 S.Ct. 1931, 1937 n. 4, 100 L.Ed.2d 497 (1988)). On the other hand, if access to a governmental forum is undertaken in order to harass others or to obstruct others' ability to seek relief, the petitioner cannot use its right to petition as a shield against the consequences of its actions.

■ Here, defendants did not undertake the petitioning process in order to directly harass the plaintiffs. Instead, defendants' actions were concerned with obtaining a specific outcome: the incorporation of Airmont. The general rule is that the petitioning of the government for relief is protected by the first amendment when done through lawful means even if the outcome solicited is used as a weapon. *See Omni,* 111 S.Ct. at 1355; *California Transport,* 404 U.S. at 515, 92 S.Ct. at 614.

■ However, the right to first amendment protection, although broad, is not absolute. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (defamation may be actionable despite first amendment); *Smith v. McDonald,* 737 F.2d 427, 429 (4th Cir.1984) (first amendment protection is not absolute), *aff'd,* 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). Indeed, specific categories of speech such as fighting words and obscenity are not protected. The question becomes whether or not the actions taken by the defendants in this case constitute protected activity. *See In re IBP Confidential Business Documents,* 755 F.2d 1300, 1313 (8th Cir.1985).

Plaintiffs allege that the defendants petitioned for incorporation in order to achieve discriminatory goals. Discrimination through the exercise of government power is illegal, to state the obvious. It is one thing to make use of a petition to achieve legitimate, though adverse, goals. It is quite another to use a legitimate process for illegal purposes. "Acts generally lawful may become unlawful when done to

accomplish an unlawful end, and a constitutional power cannot be used by way of condition to attain an unconstitutional result." *Gomillion v. Lightfoot,* 364 U.S. 339, 345–46, 81 S.Ct. 125, 129, 5 L.Ed.2d 110 (1960) (citations omitted).

■ Taking the plaintiffs' allegations of defendants' motives as true, we are not prepared to conclude that defendants' conduct is protected by the first amendment. The "first amendment . . . may not be used as the means or the pretext for achieving 'substantial evils' which the legislature has the power to control." *California Motor Transp.,* 404 U.S. at 515, 92 S.Ct. at 614. To allow individuals to avail themselves of first amendment protections when it is alleged that their conduct will lead to official misconduct in violation of the United States Constitution would defeat the purpose of the civil rights laws. "It is inconceivable the guaranties embedded in the Constitution of the United States may thus be manipulated out of existence." *Gomillion,* 364 U.S. at 345, 81 S.Ct. at 129 (quoting *Frost & Frost Trucking Co. v. Railroad Commission of California,* 271 U.S. 583, 594, 46 S.Ct. 605, 607, 70 L.Ed. 1101). Particularly when the process invoked has no inherent safeguards to ensure that the rights of others are not abused, society's interest in protecting against discrimination must be accommodated. The value of the right to petition is not diminished by recognizing that the political process may not be subverted to achieve unlawful goals.

## CIVIL RIGHTS CLAIMS

### 1. *Sections 1981 and 1982*

In their amended complaint, plaintiffs allege that the defendants violated their property and housing rights in violation of 42 U.S.C. §§ 1981 and 1982. Defendants contend that these statutes were directed at discrimination based upon race, not religion, and as a result, plaintiffs have failed to state a claim upon which relief can be granted. *See Saint Francis College v. Al*

*Khazraji,* 481 U.S. 604, 609, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987); *Runyon v. McCrary,* 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976). "[Sections 1981 and 1982] are exclusively directed at discrimination based on race and do not address discrimination based upon religious affiliation." *Catholic War Veterans of the United States v. City of New York,* 576 F.Supp. 71, 74 (S.D.N.Y.1983).

The gravamen of the complaint is that the defendants undertook their actions in order to achieve their discriminatory goals against Orthodox Jews. The defendants do not dispute the fact that Jewish people entitled to the protections of §§ 1981 and 1982. *See Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 618, 107 S.Ct. 2019, 2022, 95 L.Ed.2d 594 (1987). However, defendants argue that their alleged discriminatory acts were addressed solely to the plaintiffs' affiliation as Orthodox Jews.[4] They suggest that the complaint is framed in terms which claim religious-based discrimination in that any discrimination was directed toward the plaintiffs' lifestyle as dictated by the tenets of plaintiffs' religion. *See Weiss v. Willow Tree Civic Assoc.,* 467 F.Supp. at 815–16.

■ The complaint does assert that the plaintiffs suffered discrimination because they were Orthodox Jews. However, that makes no difference. Sections 1981 and 1982 were "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis College v. Al Khazraji,* 481 U.S. at 613, 107 S.Ct. at 2028. Because Jewish culture, ancestry, and ethnic identity are intricately bound up with Judaic religious beliefs, racial and religious discrimination against Jews cannot be as easily distinguished as defendants would have it. *See Bachman v. St. Monica's Congregation,* 902 F.2d 1259, 1260–61 (7th Cir.1990). Moreover, the Supreme Court has explicitly stated

---

**4.** Judaism is divided into three main branches: Orthodox, Conservative and Reformed. The difference between the main branches is primarily based on religious practices. However, even among the Orthodox, groups can be seen whose differences from other Jews are readily detectable. No matter what the branch, all members of these three branches are considered Jewish.

that Jews are entitled to the protections of §§ 1981 and 1982 because Jews were considered to be a separate race in 1870 when those statutes became law. *Shaare Tefila,* 481 U.S. at 617, 107 S.Ct. at 2021. We need not inquire any further.

### 2. *Section 1983*

The Airmont defendants challenge the claims brought under 42 U.S.C. § 1983 on the basis that they were not acting under color of state law but were instead acting as private parties. They argue that there is no evidence of joint action between private and municipal officials and that "mere use by private parties of existing state procedures does not in and of itself give rise to state action." Defendants' Brief in Opposition at 23 (quoting *Jones v. Deutsch,* 715 F.Supp. 1237, 1249 (S.D.N.Y.1989)).

In *Edmonson v. Leesville Concrete Co., Inc.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Supreme Court held that a private attorney exercising peremptory challenges in a civil trial for the purpose of excluding jurors on the basis of race was engaging in state action.[5] As noted by the court, the framework for state action analysis, as set forth in *Lugar v. Edmondson,* 457 U.S. 922, 936–37, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982), requires that both the claimed constitutional deprivation result from the exercise of a right or privilege having its source in state authority and that the private party charged with the deprivation could be described in all fairness as a state actor. *Edmonson,* 111 S.Ct. at 2082.

Plaintiffs urge that application of the *Lugar* test clearly demonstrates that the Airmont defendants were state actors. We disagree. The difference between the facts in *Edmonson* and this case emerges immediately as the first prong of the state action analysis is considered.

■ In *Edmonson,* the Court was considering the use of peremptory challenges which is a practice established by state statute. There is no constitutional requirement that a litigant be able to exercise peremptory challenges and therefore the right has its source in state authority. Here, in contrast, the challenged action has its source in the United States Constitution rather than state authority. Defendants, in filing a petition for incorporation, were simply exercising their right to petition for redress of grievances, as guaranteed by the first amendment. Thus, they were using constitutional right rather than a statutory right.[6] Therefore, it cannot be said that the deprivation suffered by the plaintiffs as a result of the defendants' conduct resulted from the exercise of a right having its source in state authority and the first prong of the *Lugar* test is not satisfied.

■ We are cognizant that both the relief sought and the petitioning process itself are derived from state law. However, invocation of state procedures does not make a private party a state actor. If the state does nothing to encourage a particular practice, the provision of a mechanism to exercise a right does not turn the private action into state action. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 358, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974) (no state action where utility terminated electrical service under authority granted it by the State, pursuant to a procedure approved by the state utility commission). Here, the petition was initiated by private citizens and the incorporation occurred only after electoral approval by the affected residents. The state's involvement was limited to ascertaining that the petition and election were legally sufficient. The private citizens of Airmont, rather than New York state, dictated the incorporation.

---

**5.** This case was a negligence action brought by a construction worker, arising out of a job-site accident. Defendant used two of its three peremptory challenges to remove black persons from the prospective jury.

**6.** We see no conflict with out earlier holding that defendants are not protected by the first amendment. The right to petition has its source in the constitution not in state authority. That the right to petition may be subject to limitation in appropriate circumstances is irrelevant to the state action doctrine.

### 3. *Section 1985(3)*

As Orthodox Jews, plaintiffs are within the scope of the protections accorded by 42 U.S.C. § 1985(3). An action lies under § 1985(3) when a plaintiff is injured by a private conspiracy to interfere with his constitutional rights, so long as there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). We stated earlier that we believed that Orthodox Jews were entitled to protection under the civil rights statutes on the basis of race-based animus. In any case, religious-based discrimination is clearly within the ambit of this particular statute. *See Colombrito v. Kelly*, 764 F.2d 122, 130 (2d Cir.1985); *Ward v. Connor*, 657 F.2d 45, 48 (4th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982). Thus, the plaintiffs are entitled to assert their claims arising under this statute.

### FIRST AMENDMENT AND FAIR HOUSING ACT CLAIMS

The defendants suggest that the plaintiffs' first amendment and Fair Housing Act claims should be dismissed because they are premature and because plaintiffs have failed to state a claim upon which relief can be granted.

### 1. *Justiciability*

The question of standing is the "threshold question in every federal case, determining the power of the court to entertain the suit." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). At a minimum, Article III of the Constitution requires a party seeking to invoke a federal court's jurisdiction to demonstrate that: 1) " 'he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant' "; 2) "the injury 'fairly can be traced to the challenged action' "; and

3) the injury " 'is likely to redressed by a favorable decision.' " *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted); *Southside Fair Housing Committee v. City of New York*, 928 F.2d 1336, 1341 (1991).

Defendants contend that application of the standing doctrine to the allegations in the complaint require that the second and third claims alleging free speech and fair housing violations be dismissed for lack of justiciability. To the extent that the complaint alleges that zoning laws will be passed or will be enforced in such a manner that Orthodox Jews will be effectively excluded as residents of Airmont, the plaintiffs are still engaging in speculation. While the election of the ACA slate as the Village's administration moves plaintiffs' fears one step closer to reality, until the zoning has become a palpable reality, no injury has been stated.[7]

But plaintiffs make another assertion in their complaint. They assert that the incorporation itself has burdened their rights to free exercise of religion and freedom of association amounting to injury both under the First Amendment and the Fair Housing Act. As the incorporation is reality, the claims related to that must be examined to resolve the issue of standing.

At the outset, we are persuaded that the plaintiffs have alleged personal injury as a result of the defendants' conduct under both statutes. With respect to their first amendment claims, plaintiffs allege that the intention of the incorporation was to prevent the Orthodox Jewish community from establishing a synagogue in the village. As a result, they claim that other Orthodox Jews have hesitated to move into the Airmont area which negatively impacts the plaintiffs' right to free association. *See* Affidavit of Chanie LeBlanc–Sternberg (April 25, 1991), ¶ 8; Affidavit of Fred Walfish April 25, 1991), ¶ 12. In addition,

---

**7.** The ACA slate ran for office on promises of "strict" or "strong" zoning. Plaintiffs claim that

these are code words for exclusionary zoning.

one has a right to join with others to pursue goals independently protected by the first amendment such as religious worship. *See Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). If governmental action has a chilling effect on the ability to associate for religious purposes, then an injury has been stated sufficient to satisfy the first prong of the standing analysis. *See The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 521–523 (9th Cir.1989).

■■■■ Similar reasoning supports plaintiffs' contention that they have stated an injury under the Fair Housing Act. Though plaintiffs themselves have not been excluded from living in Airmont, they assert that the incorporation has had the effect of making Airmont a less desirable place to live for Orthodox Jews who fear that they could not freely practice their religion. As a result, Orthodox Jews are dissuaded from moving into Airmont which plaintiffs assert has injured them. Defendants argue that the plaintiffs are attempting to assert the rights of third parties and this should not be permitted.

The Fair Housing Act embraces a broad concept of standing and courts lack the authority to create prudential barriers to standing in suits brought under that Act. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). As the bar to allowing third parties to vindicate the rights of others is prudential, *Craig v. Boren*, 429 U.S. 190, 193, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976), under the Fair Housing Act, the distinction between "third party" and "first party" standing is of little significance. *Havens Realty Corp. v. Coleman*, 455 U.S. 363 at 375, 102 S.Ct. 1114 at 1122, 71 L.Ed.2d 214. The only requirement for standing to sue under the Fair Housing Act is the Article III requirement of injury in fact. *Id.* at 376, 102 S.Ct. at 1123. "As

long as [plaintiffs] have alleged distinct and palpable injuries that are 'fairly traceable' to [defendants'] actions, the Art. III requirement of injury in fact is satisfied." *Id.; Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). Plaintiffs claim that their ability to associate with others of similar beliefs is limited by the chilling effect that the incorporation has had on the desire of the Orthodox to move into Airmont. Thus, they are deprived of the benefits that would accrue from living in a neighborhood where all people are welcome regardless of their color or faith. In this case, direct violations of the rights of others injure the plaintiffs. *See, e.g., Craig v. Boren*, 429 U.S. 190, 194, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976) (licensed vendor of beer has standing to assert equal protection claim of third parties because she suffers economic injury from statute barring sales of liquor to males under 21 years of age); *Singleton v. Wulff*, 428 U.S. 106, 118, 96 S.Ct. 2868, 2876, 49 L.Ed.2d 826 (1976) (doctor paid by Medicaid may assert the rights of female patients as against governmental interference with the abortion decision).

■■■ In sum, we find that the plaintiffs have sufficiently stated an injury in fact. Additionally, the facts alleged show the injury to be traceable to the defendants[8] and that the injury can be redressed by the court. Plaintiffs have standing to bring this suit.

■■■ The defendants also argue that this case is not justiciable because it is not ripe, pointing to the fact that no exclusionary zoning laws have been passed. The ripeness doctrine is designed to ensure that a dispute has matured to a point that warrants decision. Ripeness "turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Pacific Gas*

---

**8.** Defendants have attempted to argue that the plaintiffs' injuries cannot be traced to the defendants. The facts in the complaint, if proven to be true, show otherwise. The Airmont defendants initiated the petition for incorporation and were very active in its passage. The complaint alleges that it was ACA members who chose the boundaries of Airmont. In addition, as the individual defendants are now the Village officials, any exclusionary zoning laws that pass will be their responsibility.

& Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

The point would appear to have been reached because the village incorporation has occurred. *Jones v. Deutsch*, 715 F.Supp. 1237, 1247 (S.D.N.Y.1989) (where village incorporation had not yet taken place, challenge to creation of village was not ripe). *See United States v. Scotland Neck City Bd. of Educ.*, 407 U.S. 484, 486–87, 92 S.Ct. 2214, 2216, 33 L.Ed.2d 75 (1972) (issues ripe where state statute authorizing creation of new school district had been approved in order to frustrate school desegregation orders and ratified by voters); *Lee v. Macon County Bd. of Educ.*, 448 F.2d 746, 749, 752 (5th Cir.1971) (incorporation of independent school district had occurred making dispute ripe). The crux of this complaint is that the boundaries of an incorporated village were chosen with discriminatory intent. *Gomillion*, 364 U.S. 339, 81 S.Ct. 125. In light of the plaintiffs' claims that the incorporation itself is adversely impacting their freedom of association and free exercise of religion, hardship would continue to accrue to the plaintiffs were this court to withhold its consideration. Thus, this case is ready for judicial intervention.

### 2. *Claims Arising Under the First Amendment*

■ Defendants suggest that the incorporation of Airmont is a neutral governmental action which has an incidental impact upon the free exercise of religion by the plaintiffs. Plaintiffs respond that the incorporation is not neutral governmental action because it was carried out to accomplish a discriminatory purpose. We find that the facts alleged show that the incorporation had more than an incidental impact on plaintiffs' right of free exercise of religion.

First, plaintiffs allege that without being able to worship in Rabbi Sternberg's home, they will be unable to worship. The near-

est Orthodox synagogue is over a mile away. *Compare Grosz v. City of Miami*, 721 F.2d 729 (11th Cir.1983) (no burden on free exercise found because plaintiff only had to walk four blocks to attend services), *cert. denied*, 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984). But more important, that synagogue has already reached its legal capacity, and thus plaintiffs cannot attend services there. Plaintiffs also allege that because other Orthodox families have been dissuaded by the incorporation from moving into Airmont, the plaintiffs are unable to raise the funds necessary to construct a synagogue that will conform with local zoning laws. Finally, the permit for worship in Rabbi Sternberg's home is temporary and has to be renewed at regular intervals. Thus, while plaintiffs are able to worship freely in their local community at this moment, this freedom is not permanent and now dependent upon the good graces of the Airmont officials. In light of the rhetoric used during the incorporation debate and the election campaign, plaintiffs justifiably feel uncomfortable relying on the status quo. On this basis, we decline to dismiss plaintiffs' first amendment claims at this time. As events unfold in the very near future, the factual nature of the plaintiffs' claims will reveal itself and the sufficiency of the first amendment claims can be better judged.

### 3. *Claims Arising Under the Fair Housing Act*

■ Plaintiffs claim that they are being denied "the benefits of association, interaction, and other contact arising from living in a community that is free of discrimination on account of race, ethnicity, religion, or ancestry." Second Amended Complaint, ¶ 77(c). The source of this discrimination is alleged to be the activities of ACA and the ACA defendants which have been manifested by the incorporation of Airmont with the purported assistance of Herbert Reisman, the Town Supervisor.

Allegations similar to those made by the plaintiffs, though somewhat vaguely stated here, have been found to sufficiently state a claim under 42 U.S.C. § 3612. *See Ha-*

*vens,* 455 U.S. at 376, 102 S.Ct. at 1123. In addition, the complaint suggests a cause of action under 42 U.S.C. § 3617 which states that "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right granted or protected by section 3603 [or] 3604 of this title." Broadly construed, the complaint describes the intimidation of the residents of Airmont; affidavits appended to earlier pleadings assert that knowledge of the intimidation tactics used by ACA members discouraged other Orthodox Jews from moving into Airmont. We find that a claim under the Fair Housing Act has been sufficiently stated.

### PLAINTIFFS' CLAIMS UNDER THE VOTING RIGHTS ACT

Plaintiffs allege that the defendants gerrymandered the borders of Airmont to exclude as many Orthodox Jews as possible which had the effect of diminishing the voting power of the Orthodox Jewish residents. Although the fairly symmetrical shape of Airmont does not make the establishment of the borders obviously suspect, *see Gomillion,* 364 U.S. 339, 81 S.Ct. 125 (city originally shaped like square was redrawn as an irregular twenty-eight side figure), plaintiffs nevertheless assert that the defendants, in choosing the boundaries of the village, consciously chose to exclude as many Orthodox Jewish residents as possible.[9]

▮▮▮▮ An innocently motivated apportionment scheme, though it may serve to dilute the votes of a particular racial group, is not illegal. *Id.,* 364 U.S. at 347, 81 S.Ct. at 130. Indeed, it is axiomatic that there is no right to community recognition in the redistricting process. *Mirrione v. Anderson,* 717 F.2d 743, 745 (2d Cir.1983). Even though the political strength of a community would be diluted by a redistricting plan, members of a community have "no claim to being left together in one district at least absent a showing of discrimination on grounds of race or color."

*United Jewish Organizations of Williamsburgh, Inc. v. Wilson,* 510 F.2d 512 (2d Cir.1974), *aff'd on other grounds sub nom. United Jewish Organizations of Williamsburgh, Inc. v. Carey,* 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977). However, should plaintiffs be able to prove that discriminatory intent dictated the boundaries of the Village, then a violation of the Voting Rights Act has been stated. *Mobile v. Bolden,* 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980); *see Metropolitan Housing,* 429 U.S. at 267, 97 S.Ct. at 564; *Wright v. Rockefeller,* 376 U.S. 52, 56, 58, 84 S.Ct. 603, 606, 11 L.Ed.2d 512 (1964). The complaint is replete with allegations suggesting such animus. *See* Complaint, ¶¶ 1, 22, 25–27, 31–35, and 41. Plaintiffs must be given the opportunity to test the merit of their allegations.

Defendants also argue that no vote dilution occurred because, until the Airmont incorporation, plaintiffs did not have any right to vote in Airmont elections. While this is true, we believe defendants have not properly stated the case. Prior to the incorporation, plaintiffs voted in the Ramapo elections and, in doing so, they would attempt to elect officials who would represent them on matters of local concern including zoning and taxation. Although plaintiffs still possess the right to vote, their right to "fair and effective representation", *Reynolds v. Sims,* 377 U.S. 533, 565–66, 84 S.Ct. 1362, 1383–84, 12 L.Ed.2d 506 (1964), on matters of local concern has allegedly been abridged through the deliberate and discriminatory minimization of their votes' effectiveness.

Plaintiffs assert that they can make the requisite showing of discrimination and have sufficiently alleged facts to allow this claim to go forward.

### THE SUFFICIENCY OF THE CLAIMS ASSERTED AGAINST THE DEFENDANTS

Defendants challenge the sufficiency of the complaint on two grounds. First, they

---

**9.** The fact that other villages have been formed in the Town of Ramapo for the purpose of excluding those *not* Orthodox Jewish does not excuse such reverse action. Of the eleven vil-

lages in Ramapo, two, Kesar and New Square, were purportedly formed in order to enact zoning laws facilitating Orthodox Judaism. *See LeBlanc–Sternberg,* 763 F.Supp. at 1247 n. 1.

argue that the facts alleged in the complaint are not specific enough to sustain claims of conspiracy. Second, they assert that the complaint makes insufficient allegations against some of the individual Airmont defendants.

 A review of the complaint reveals that plaintiffs have more than adequately alleged facts justifying the retention of all of the remaining defendants in this case. While sometimes the pleadings are somewhat scant, it is difficult to separate the individual defendants from their ACA association at this stage in the pleadings. Moreover, the conspiracy elements, which we believe to be adequately pled, are a thread binding the individual defendants to the various violations alleged. The complaint suggests that ACA was originally formed to achieve the individual defendants' discriminatory goals and essentially became an instrument of the conspiracy. As time passed, other conspirators joined. It is alleged that the individual defendants were active members of ACA who endorsed its goals and were active in the organization on its behalf. As candidates for public office running on a platform endorsed by ACA, the individual defendants were promoting the organization's goals. The plaintiffs allege that ACA was dedicated to achieving the exclusion of Orthodox Jews from Airmont residence. A sufficient connection thus has been alleged between the actions of the individual defendants and the instrument of the conspiracy to let the conspiracy allegations stand. In addition, the complaint alleges that the defendants in conjunction with Reisman and the Town of Ramapo acted in concert to establish the Village. Overt acts in furtherance of the conspiracy, another necessary element, have also been sufficiently alleged in the form of meetings between various defendants to determine the boundaries of the village and the preparation and circulation of the incorporation petition by defendants Kane, Kendrick, and Layne.

We find that the complaint sufficiently states all of the causes of action against the individual defendants and that conspiracy has been adequately pled. It is worth repeating that for purposes of a motion to dismiss, the allegations of the complaint must be accepted as true. We are aware of the contrary position of the defendants that they favor strict enforcement of residential zoning to preserve their quality of life and that this is not directed particularly toward Orthodox Jewish activities. We also know of their claim that the incorporation of the Village has had no effect on sales of homes to the Orthodox. However, these are not matters appropriately considered on a motion to dismiss.

## CONCLUSION

The Airmont defendants' motion to dismiss is granted with respect to the claims arising under 42 U.S.C. § 1983. The motion is denied in all other respects.[10]

SO ORDERED.

---

10. The defendants have also moved to dismiss the causes of action arising under New York state law. These claims mirror the federal claims already found to be sufficient as defendants acknowledge. Thus, the claims cannot be dismissed. Moreover, the defendants focus their arguments on exclusionary zoning laws yet to be passed. As we have stated several times earlier, the incorporation itself has allegedly had a negative impact upon the plaintiffs. Defendants have not addressed this issue in the context of state law.