Eddie **FRAZIER**, Diane Treloar and Long Island Housing Services, Inc., Plaintiffs–Appellants,

v.

Tony **ROMINGER** and Anna Maria Rominger, Defendants–Appellees.

No. 1234, Docket 93–9028.

United States Court of Appeals, Second Circuit.

Argued March 17, 1994.

Decided June 23, 1994.

Alan Jenkins, New York City (Elaine R. Jones, Director–Counsel, Theodore M. Shaw, Charles Stephen Ralston, New York City, Penda D. Hair, Washington, DC, NAACP Legal Defense & Educational Fund, Inc., Richard F. Bellman, Lewis M. Steel, Steel, Bellman, Ritz & Clark, New York City, of counsel), for plaintiffs-appellants.

William D. Wexler, North Babylon, NY, for defendants-appellees.

* Honorable James M. Sprouse of the United States Court of Appeals for the Fourth Circuit, sitting by

John P. Relman, Lars Waldorf, Washington Lawyers' Committee for Civil Rights & Urban Affairs, Washington, DC, for amicus curiae The National Fair Housing Alliance.

Before MAHONEY, WALKER and SPROUSE,* Circuit Judges.

WALKER, Circuit Judge:

Plaintiffs brought an action under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and under 42 U.S.C. § 1982, alleging that defendants unlawfully discriminated against the individual plaintiffs when defendants failed to rent them an apartment. After a two-week trial, the jury returned a verdict finding no violation of either the Fair Housing Act or 42 U.S.C. § 1982. The United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*) denied plaintiffs' motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) and for a new trial pursuant to Fed.R.Civ.P. 59. In this appeal, plaintiffs argue that they were entitled to (1) judgment as a matter of law because defendants failed to rebut their prima facie case under the Fair Housing Act, or alternatively (2) a new trial because the district court failed to instruct the jury as to a cause of action for interference with the plaintiffs' Fair Housing Act rights. We affirm.

## BACKGROUND

Eddie Frazier, who is African–American, and Diane Treloar, who is white, were looking to rent an apartment together on Long Island. In the course of their search, they contacted the defendants, Tony and Anna Maria Rominger, who had placed an apartment advertisement in *New York Newsday.* On July 28, 1991, Mr. Rominger showed the apartment to Mr. Frazier and Ms. Treloar. Prior to this meeting, Mr. Rominger had shown the apartment to four other individuals, all of whom were white.

Although the parties disagree over certain aspects of the July 28, 1991 meeting, the central facts are not in dispute. After about

designation.

fifteen minutes of inspecting the apartment and surrounding grounds, with Ms. Treloar taking the lead in asking questions about the apartment, Mr. Frazier and Ms. Treloar embraced and informed Mr. Rominger that they would take the apartment. At this point, Mr. Rominger stated that they would have to fill out an application. Further, he indicated at some point during the meeting that he preferred to rent to a single person, although the advertisement had stated that the apartment was for one or two people. Finally, he explained to the couple that he had already shown the apartment to another individual whom he preferred over the couple because that prospective tenant was a handyman.

Plaintiffs contended in the district court that once Mr. Rominger realized that the apartment would be for both Ms. Treloar and Mr. Frazier, Mr. Rominger's manner noticeably changed, and he began making excuses to deny them the apartment. Mr. Rominger testified that he had assumed from the outset that the apartment would be for both Ms. Treloar and Mr. Frazier.

The couple became quiet as they left the apartment with Mr. Rominger. When they reached the front of the building, Mr. Frazier questioned Mr. Rominger about his apparent hesitancy in renting the apartment. Mr. Frazier asked Mr. Rominger, "Is this a racial thing?" Mr. Rominger replied, "Of course not. Everybody has to fill out an application." The parties dispute the tone of the conversation. Mr. Rominger testified that Mr. Frazier's "voice was very angry." Mr. Frazier, for his part, testified that, although he was "very direct and to the point," he never raised his voice or argued with Mr. Rominger.

After this brief exchange, Mr. Frazier became silent. Mr. Rominger gave an application to the plaintiffs, and Ms. Treloar filled it out. The plaintiffs left shortly thereafter. There is no dispute that Mr. Rominger failed to follow up on the couple's application and did not return their telephone calls.

The next day, Ms. Treloar went to the offices of plaintiff Long Island Housing Services ("LIHS") to complain that Mr. Rominger had discriminated against the couple. LIHS decided to send "testers" to apply for the Romingers' apartment to corroborate Ms. Treloar's claim of discrimination. Testers are individuals who pose as potential renters to collect evidence of unlawful discrimination. *See Cabrera v. Jakabovitz,* 24 F.3d 372, 377 n. 1 (2d Cir.1994).

LIHS sent three testers: one African–American male, one white couple, and one white male. The first tester, the African–American male, went to see the apartment on July 31, 1991, three days after Mr. Rominger's meeting with Mr. Frazier and Ms. Treloar. Mr. Rominger gave this first tester an application, and he later testified that this individual was "right on top of the list" to receive the apartment. In fact, the day after their meeting, Mr. Rominger began checking his references. However, the tester had supplied fictitious references on the application. After repeated unsuccessful efforts to confirm these references, Mr. Rominger eventually became frustrated and gave up on this individual.

The second tester sent by LIHS was a white couple. When they arrived to see the apartment, Mr. Rominger also gave them an application to fill out. Shortly after viewing the apartment, this tester couple called up Mr. Rominger and left a message that they were no longer interested.

The final tester was a white male. As he did with the plaintiffs, Mr. Rominger showed him the apartment, gave him an application to fill out, and told him that he had others interested in the apartment. Mr. Rominger then went away on business and Mrs. Rominger went to South America to visit her family. The tester called Mrs. Rominger upon her return and said he would take the apartment but was told that he must await Mr. Rominger's return. Mr. Rominger, upon his return, showed the apartment again to the tester. While Mr. Rominger was again away, the tester called Mrs. Rominger and insisted on renting the apartment, only to be told again to await Mr. Rominger's return. Mrs. Rominger eventually acceded to his continued demands and told him to bring the money for the apartment. The tester called up the next day and stated that he could not

take the apartment because his wife had just lost her job.

It is undisputed that the apartment remained vacant until October of 1991, when a white couple rented the apartment. That rental lasted only one month, however, and thereafter the apartment was rented to a single Hispanic woman.

The defense presented evidence that five of the previous fifteen tenants of the apartment were minorities. The jury heard testimony from a prior tenant of the Romingers, an African–American woman, who testified that the Romingers were fair to her and that race was never an issue. Further, the Romingers described another prior tenant, an African–American family, who were not only tenants but close friends of the Romingers. Finally, Mrs. Rominger, described by the district judge as a Brazilian with dark skin, testified that she is of mixed-race heritage and that numerous of her relatives were "black," "Indian," and "Italian."

Although in preliminary requests to charge the jury, defendants had posited several reasons for denying the apartment to Mr. Frazier and Ms. Treloar, at the charging conference, defendants settled on only one reason: because Mr. Frazier unfairly raised the issue of race discrimination in their July 28, 1991 meeting. Mr. Rominger testified that being accused of race discrimination made him feel very uncomfortable, and that he considered it important to feel comfortable with his tenants.

As soon as it became clear at the charging conference that the Romingers were relying solely on this proffered justification, plaintiffs moved for a directed verdict, arguing that this justification was neither legitimate nor nondiscriminatory. The district court denied the motion. Plaintiffs also requested the court to charge the jury on a retaliation theory premised upon 42 U.S.C. § 3617. The district court pointed out that such a claim was never pleaded in the complaint notwithstanding that all the necessary facts were known to plaintiffs before trial. Treating the request as a motion to conform the pleadings to the proof, the court declined to so charge the jury.

The jury returned a verdict for the Romingers on both plaintiffs' Fair Housing Act claim and 42 U.S.C. § 1982 claim. The district court denied plaintiffs' motion for judgment as a matter of law and motion for a new trial. This appeal followed.

## DISCUSSION

### I. *Motion for Judgment as a Matter of Law*

■ Plaintiffs first argue that they were entitled to judgment as a matter of law on their Fair Housing Act claim because defendants failed to rebut their prima facie case. Under the burden-shifting framework originally established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which is applicable to cases brought under the Fair Housing Act, *see Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1039 (2d Cir.1979), if a plaintiff presents a prima facie case of discrimination, the burden of production shifts to the defendant to come forward with a "legitimate, nondiscriminatory reason" for the adverse action. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the defendant fails to offer a legitimate, nondiscriminatory reason, then the plaintiff is entitled to judgment as a matter of law. There is no dispute that the plaintiffs established a prima facie case at trial, namely, that Mr. Frazier is African–American, that the couple was qualified for the housing, that the couple did not get the housing, and finally that the housing remained open. *See* 42 U.S.C. § 3604(a); *Cabrera*, 24 F.3d at 382. Plaintiffs argue that the sole proffered justification for denying the couple the apartment—Mr. Frazier's question as to whether the perceived hesitancy was "a racial thing" and the discomfort this question engendered on Mr. Rominger's part—was neither legitimate nor nondiscriminatory. Therefore, they maintain that they are entitled to judgment as a matter of law.

The Supreme Court in *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), clarified the guiding standards in this area:

**832**

At the close of the defendant's case, the court is asked to decide whether an issue of fact remains for the trier of fact to determine. None does if, on the evidence presented, (1) any rational person would have to find the existence of facts constituting a prima facie case, and (2) the defendant has failed to meet its burden of production—*i.e.*, has failed to introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action. In that event, the court must award judgment to the plaintiff as a matter of law....

*Id.* at ——, 113 S.Ct. at 2748. In this case, therefore, if the defendants' sole proffered justification, taken as true, is legally insufficient to allow a fact-finder to conclude that there was a nondiscriminatory reason for the denial of housing, then the plaintiffs are entitled to judgment as a matter of law. *See Cabrera*, 24 F.3d at 381–82 (discussing the *Hicks* formulation in the context of housing discrimination).

Thus, the difficult question squarely presented for our review is whether a landlord's concerns that arose when the applicant asked if the perceived hesitancy to rent was "a racial thing" could constitute a "legitimate, nondiscriminatory" reason to reject a prospective tenant's application, thus permitting the case to go to the jury. We believe that, in the circumstances of this case, it can.

Mr. Rominger testified that Mr. Frazier's questioning of his requirement of a completed application as racially motivated led to a feeling of discomfort, and that he would prefer to have tenants with whom he felt comfortable. On cross-examination, Mr. Rominger discussed the encounter in the July 28, 1991 meeting:

It's a little hard to have a prospective tenant, and you have these kind of arguments in front of the house, and being charged with racial discrimination. I feel if there is no further contact I probably don't rent an apartment to somebody like this.

\* \* \* \* \* \*

I showed the apartment and in no way that I offended anybody. I stated the fact that there was other people before, and it is true. And I said to them if there is one person who would like to have the apartment, then that person is maybe more likely to get the apartment than two people. And I had a person who was very much interested in the apartment. And I wanted to convey—to convey that to them. So they get angry. And I feel that if they would have maybe said, I am sorry, maybe I overreacted, then they had a good chance to get the apartment.

In this context, we believe that Mr. Rominger articulated a legally acceptable explanation for denying Mr. Frazier and Ms. Treloar the apartment which the jury was free to accept or reject. Mr. Rominger's proffered reason was not based on Mr. Frazier's race, but rather on what Mr. Rominger viewed as an unfair accusation that he was a racist. We cannot say that the uncomfortable feeling induced by the perception of an unfounded accusation of racism is as a matter of law an unacceptable basis to decline to rent to an individual.

Mr. Rominger offered a subjective explanation why he rejected Mr. Frazier and Ms. Treloar. Courts frequently permit such subjective explanations to be considered by the fact-finder. *See Soules v. U.S. Dep't of Hous. & Urban Dev.*, 967 F.2d 817, 823 (2d Cir.1992) (tenant rejected not because of familial status but because of her "negative and combative attitude"); *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1090 (7th Cir.1982) (tenant rejected not because of race but because of his "rude and belligerent behavior in the real estate office"). To be sure, subjective explanations such as these should be examined very closely. *See Soules*, 967 F.2d at 822; *Washington*, 694 F.2d at 1089–90. In some cases, it may be expected that these subjective justifications will be a sham, camouflaging nothing more than an animus towards minority applicants. But in others, the proffered justification will accurately reflect the defendant's real motivation. In such a situation, it is peculiarly and rightfully the province of the fact-finder to determine a defendant's true reasons for the adverse action. *See Hicks*, —— U.S. at ——, 113 S.Ct. at 2749.

In this case, there was an abundance of evidence before the jury to the effect that Mr. Rominger's conduct had nothing to do with race. The defendants submitted evidence of a past record of renting to minority tenants, including the testimony of an African–American tenant who stated that the Romingers never treated her or her family unfairly on account of race. *See Sassower v. Field,* 973 F.2d 75, 77 (2d Cir.1992) (evidence of past minority tenants tended to refute a claim of discrimination), *cert. denied,* —— U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). Further, the testers' failure to establish any discriminatory practices tended to support a finding of a lack of racial animus. Moreover, Mr. Rominger testified that "We don't look at the color of people," and Mrs. Rominger, in response to the question whether she viewed tenants differently because they are black, responded, "Absolutely not. My family is black. I am black myself, if you put it this way." She went on to describe her family's mixed racial heritage. Finally, the jury learned that the apartment, after a brief one-month tenancy, eventually was rented to an Hispanic female.

In conclusion, we believe that when it is viewed in the full context of this case, the defendants' proffered reason for rejecting plaintiffs' rental application—the uncomfortable feeling engendered after Mr. Frazier raised, unfairly in Mr. Rominger's mind, the question of racial discrimination—can properly be considered by the fact-finder to be a legitimate, nondiscriminatory justification. Therefore, the district court properly denied plaintiffs' motion for judgment as a matter of law.

## II. *Motion for a New Trial*

■ Plaintiffs, joined by amicus curiae The National Fair Housing Alliance, next argue that the district court erred in denying them a new trial after refusing to charge the jury as to a cause of action for interference with the plaintiffs' Fair Housing Act rights. *See* 42 U.S.C. § 3617. We believe that a charge premised upon § 3617 was not warranted in this case.

We turn first to the language of the statute, which states:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

Under its terms, the statute protects two distinct groups of individuals. First, it safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Act rights. *See, e.g., Stirgus v. Benoit,* 720 F.Supp. 119, 123 (N.D.Ill.1989) (firebombing of plaintiff's house); *Stackhouse v. DeSitter,* 620 F.Supp. 208, 209–10 (N.D.Ill. 1985) (firebombing of plaintiff's automobile); *United States v. American Inst. of Real Estate Appraisers,* 442 F.Supp. 1072, 1079 (N.D.Ill.1977) (use of race as a factor in appraisals), *appeal dismissed,* 590 F.2d 242 (7th Cir.1978); *Laufman v. Oakley Bldg. & Loan Co.,* 408 F.Supp. 489, 498 (S.D.Ohio 1976) (denying insurance based on racial composition of the neighborhood). Second, it protects third parties, not necessarily members of the protected class, who aid or encourage protected class members in the exercise or enjoyment of their Fair Housing Act rights. *See, e.g., Smith v. Stechel,* 510 F.2d 1162, 1164 (9th Cir.1975) (managers of apartment complex fired for renting to Mexican Americans); *Wilkey v. Pyramid Constr. Co.,* 619 F.Supp. 1453, 1454 (D.Conn.1985) (rental agency secretary fired for refusing to discriminate against minorities seeking housing).

Plaintiffs claim that Mr. Frazier's questioning of Mr. Rominger's potential bias constituted the "exercise or enjoyment of" one of his rights under the Fair Housing Act, and that Mr. Rominger's refusal to rent because of this questioning constituted "interference" under § 3617. We are therefore faced with the somewhat peculiar argument by plaintiffs that the defendants' refusal to rent to plaintiffs is at the same time a § 3604(a) discrimination and a § 3617 interference, thus giving rise to two separate causes of action.

The fallacy in plaintiffs' argument lies in their equating the "right" to question defendants' motivation as racial with a "right granted or protected by section 3603, 3604, 3605, or 3606" of the Fair Housing Act. Section 3617 prohibits the interference with the exercise of Fair Housing rights only as enumerated in these referenced sections, which define the substantive violations of the Act. These sections provide that prospective tenants have a right not to be discriminated against on account of their race in a wide variety of housing transactions. *See* 42 U.S.C. § 3604 (discrimination in rental housing); § 3605 (discrimination in real estate transactions); § 3606 (discrimination in provision of brokerage services). Nowhere in these sections, however, can be found a right to question the potential racial motivations of landlords. Thus, the alleged § 3617 "interference" in this case is without a predicate.

Moreover, the only "interference" that plaintiffs can claim is the actual denial of rental housing. However, under this theory, every allegedly discriminatory denial of housing under § 3604(a) would also constitute a violation of § 3617 in that the denial "interfered" with the prospective tenant's Fair Housing Act rights. Declining to believe that Congress ever intended such a statutory overlap, we believe that the plaintiffs' sole remedy in this case existed in their § 3604(a) cause of action. Because the plaintiffs did not state a cause of action under § 3617 separate and distinct from their cause of action under § 3604(a), the district court did not err in refusing to grant the plaintiffs a new trial on their purported § 3617 claim.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.