UNITED STATES of America, Plaintiff,

v.

Pearl WEISZ, Defendant.

No. 94 Civ. 6672 (CSH).

United States District Court,
S.D. New York.

Feb. 13, 1996.

Mary Jo White, United States Attorney for the Southern District of New York, New York City (Robert W. Sadowski, Assistant United States Attorney, of counsel), for the United States of America.

Alan D. Levine, Kew Gardens, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

This action requires the Court to consider the scope of the federal Fair Housing Act, as amended ("FHA"), 42 U.S.C. § 3601 *et seq.*, within the context of acrimonious disputes between neighbors in a Rockland County town.

Defendant Pearl Weisz resides at 26 South Parker Drive in the Town of Ramapo, Rockland County. The residence across the street at 27 South Parker Drive is inhabited by John and Carol Cronin and their three children, Sean, Bruce, and Suzanne (now Suzanne Cronin Hammond) (hereinafter "the Cronins"). Following a complaint by the Cronins to the Department of Housing and Urban Development, the United States Attorney for this district brought suit on the Cronins' behalf against Weisz, alleging that Weisz's conduct toward the Cronins violates the FHA and 24 C.F.R. § 100.400(c)(2), promulgated thereunder. Weisz now moves for judgment on the pleadings dismissing the complaint under Rule 12(c), Fed.R.Civ.P. The Cronins move under Rule 24(b)(2) to intervene in the action.

As developed more fully *infra*, defendant may prevail on her Rule 12(c) motion only if the Court, having accepted as true the well-pleaded factual allegations in the complaint, concludes that beyond a doubt the government can prove no set of facts in support of its claim which would entitle it to relief. It is

accordingly necessary at the outset to focus upon the factual allegations in the government's complaint.

The government alleges in ¶ 11 of the complaint that "[s]ince approximately April 1991 through the present, defendant Pearl Weisz has coerced, intimidated, threatened and interfered with the Cronins' enjoyment of their dwelling because of the Cronins' religion" (Roman Catholic) by conducting herself in specific ways set forth in a series of subparagraphs to ¶ 11. The complaint there alleges:

During the period April 1991 through November 1992, Weisz complained to the Town of Ramapo Police Department about the Cronins' behavior, and asked that the police surveil the Cronins' home on days when the defendant or her neighbors are not permitted to make telephone calls during the Jewish Sabbath. ¶ 11(a), (b).

Commencing in July 1992, Weisz contacted public ·officials of the Town of Ramapo to complain about a "basketball pole" located on the Cronins' property. In September 1992, Weisz commenced a series of complaints to the United States Postal Service about the basketball pole. ¶ 11(c), (f).

On July 13, 1992, Weisz wrote a letter to the Office of the Supervisor of the Town of Ramapo, complaining of the behavior of the Cronins' sons and their friends. ¶ 11(d).

On August 17, 1992 Weisz signed a Criminal Court Information charging Sean Cronin with trespass, alleging that on August 10, 1992, Sean Cronin entered Weisz's property to retrieve a basketball. ¶ 11(e).

On or about September 8, 1992 Weisz called Carol Cronin's place of employment at Yeshiva University in New York, spoke to Carol Cronin's supervisor, complained of a "Mrs. C" who lived on Weisz's block in Rockland County, stated that Weisz's two young children were being harassed by "Mrs. C's older children," and stated further that she [Weisz] "was Orthodox and that she was surprised that Yeshiva University hired non-Jews, especially those of German decent and who are anti-Semitic." ¶ 11(g).

On September 23, 1992, as a result of Weisz's complaints to the town officials, the Town of Ramapo removed the Cronins basketball pole. The government alleges further that the Town "apparently has not taken any such action against other similarly situated residents." ¶ 11(h).

In April 1993, Weisz initiated an action in Small Claims Court against Sean Cronin for breach of a mediation agreement which had arisen out of the August 1992 criminal court information that Weisz had signed against Sean Cronin. ¶ 11(i).

On April 15 and May 23, 1993, Weisz called the police and made further complaints about noise made by the Cronins. ¶ 11(j).

In December 1993, defendant caused to be placed an advertisement in *The Jewish Press* listing the Cronins' home for sale and stating that it was "open for four days, including Christmas Eve and Christmas Day, December 24 and 25, 1993, with the result that the Cronins suffered unwelcomed intrusions into their home during the Christmas holiday period." ¶ 11(k).

On February 24, 1994, Weisz called the police and "falsely accused Sean Cronin of hitting the defendant's son with a snowball." ¶ 11(*l*).

Confronted with these allegations, Weisz moves for judgment on the pleadings pursuant to Rule 12(c). The Cronins move under Rule 24(b)(2) to intervene in the action.

### Discussion

█ Judgment on the pleadings under Rule 12(c) is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law. The standard for granting or denying the motion is the same as that applicable to a motion to dismiss a claim under Rule 12(b)(6). On either motion, the Court must accept as true the well-pleaded factual allegations in the complaint, and draw all reasonable inferences in favor of the nonmoving party. Consistent with these familiar principles, the Court should grant the Rule 12(c) motion of defendant at bar only if after viewing the government's allegations in this favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York*, 974

F.2d 293, 298 (2d Cir.1992), citing and quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991) (Rule 12(b)(6) motion.)

■ While as noted the nonmoving party's well-pleaded factual allegations must be taken as true, it is equally well established that "the district court in considering a Rule 12(c) motion" need not accept the pleader's "legal conclusions [and] characterizations." *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir.1989), citing and quoting *Tyco Laboratories, Inc. v. Cutler–Hammer, Inc.*, 490 F.Supp. 1, 4 (S.D.N.Y.1980) ("under Rule 12(c), a court need not accept as admitted mere legal conclusions or characterizations contained in the nonmovant's pleadings.").

In *Madonna* the plaintiff alleged that the government summoned him to testify before a grand jury for abusive and improper reasons. Confronted with the government's motion for judgment on the pleadings under Rule 12(c), Madonna claimed "that the court was required to accept as true his allegations that the AUSA used the grand jury as a subterfuge to further an undercover investigation and as a 'contempt trap.'" 878 F.2d at 65. The Second Circuit held that those claims were Madonna's own legal conclusions and characterizations, that the district court need not accept. The district court's proper function is to accept the nonmoving party's well-pleaded factual allegations as true, and, drawing therefrom any reasonable inferences in the pleader's favor, determine whether the moving party is entitled to judgment as a matter of law. In *Madonna* the Second Circuit, viewing plaintiff's factual allegations and the inferences that might reasonably be drawn from them, concluded that "the complaint still does not show any fraud or misrepresentation by the government." *Id.* Accordingly the court of appeals affirmed the district court's entry of judgment in the government's favor under Rule 12(c). *See also Cagan v. Intervest Midwest Real Estate Corp.*, 774 F.Supp. 1089, 1098 n. 11 (N.D.Ill. 1991) (court was not required to accept the truth of a bare conclusory allegation of lack of consideration).

■ In the case at bar, the well-pleaded factual allegations concerning the conduct of defendant Weisz appear in the lettered subparagraphs to ¶ 11. The prefatory language in ¶ 11, that through such conduct Weisz "has coerced, intimidated, threatened, and interfered with the Cronins' enjoyment of their dwelling because of the Cronins' religion," which tracks the language of the FHA, is entirely conclusory and represents the government's characterization of the intent underlying Weisz's conduct. That characterization is no more binding upon the Court for Rule 12(c) purposes than were the plaintiff's characterizations of the government's purposes in *Madonna v. United States*.

■ The decisive question is whether a proper interpretation of the text of the FHA reaches the particular actions of the defendant alleged in the complaint. *See Michigan Protection & Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 340 (6th Cir.1994).

The government alleges that Weisz violated Section 818 of the FHA (formerly Section 817), 42 U.S.C. § 3617. That section provides:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

The government also alleges that Weisz violated 24 C.F.R. § 100.400(c)(2). That regulation provides:

Conduct made unlawful under this section includes, but is not limited to, the following:

Threatening, intimidating, or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons.

Analysis of whether the conduct alleged falls within the FHA depends primarily upon the wording of the statute and the intent of Congress in enacting it, rather than in regu-

lations, since the agency promulgating them lacks the authority to expand upon statute.

15 U.S.C. § 3617 protects persons "in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 ..." It is immediately apparent that the conduct of Weisz, as alleged in the complaint, does not implicate any of the rights granted or protected by §§ 3603, 3604, 3605, or 3606 of the FHA. § 3603 contain definitions and exemptions with respect to the selling or renting of dwellings. Section 3604 prohibits discrimination in the sale or rental of housing and certain practices related thereto. Section 3605 prohibits discrimination in residential real estate-related transactions. Section 3606 prohibits discrimination in the provision of brokerage services. None of these protected areas, important as they are, is even arguably implicated by the conduct in which the government alleges defendant Weisz engaged.

But the government says that makes no difference because "courts have established that § 3617 may be violated absent a specific violation of Sections 3603, 3604, 3605 or 3606." Government brief at 9. For that proposition, the government cites *LeBlanc–Sternberg v. Fletcher,* 781 F.Supp. 261, 272 (S.D.N.Y.1991); *Stackhouse v. DeSitter,* 620 F.Supp. 208, 210 (N.D.Ill.1985); and *Laufman v. Oakley Building & Loan Co.,* 408 F.Supp. 489, 497–98 (S.D.Ohio 1976).

The necessity of a nexus between § 3617 and the sections enumerated therein is not free from doubt. In *Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d at 346, 347 n. 4, the Sixth Circuit left open the question of whether a § 3617 claim depended upon the validity of a claim under one of the sections enumerated in § 3617. The Seventh Circuit has also expressly declined to decide whether § 3617 could be violated by conduct which did not also violate one of the other enumerated sections. *Metropolitan Housing Development Corp. v. Arlington Heights,* 558 F.2d 1283, 1288 n. 5 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). The Second Circuit does not appear to have addressed the issue.

I will assume *arguendo* that conduct may violate § 3617 without having directly violated any of the other sections. Nonetheless, it seems clear enough that to bring a claim within § 3617, a plaintiff must allege conduct on the part of a defendant which in some way or other implicates the concerns expressed by Congress in the FHA. If it were otherwise, the FHA would federalize any dispute involving residences and people who live in them. Nothing in the statute or its legislative history supports so startling a proposition.

The three district court cases cited by the government are consistent with that principle. In *LeBlanc–Sternberg v. Fletcher,* the complaint and appended documents asserted that "knowledge of the intimidation tactics used by ACA members discouraged other Orthodox Jews from moving into Airmont." 781 F.Supp. at 272. Not surprisingly, Judge Goettel went on to say: "We find that a claim under the Fair Housing Act has been sufficiently stated." *Id.* In *Stackhouse v. DeSitter,* the district court held that "§ 3617 may be violated absent a violation of § 3603, 3604, 3605 or 3606", 620 F.Supp. at 210, and applied that principle to a complaint alleging that "after [plaintiff] and his family exercised their right to rent an apartment free of racial discrimination, as protected by § 3604 [defendant] attempted to frighten and drive them away from the previously all white neighborhood through acts of violence and property damage." *Id.* at 211. Not surprisingly, the district court concluded that "[s]uch conduct is squarely within the range of actions prohibited by § 3617, whether or not any other section of the Act was violated." *Id.* (footnote omitted). In *Laufman v. Oakley Building & Loan Co.,* the district court concluded, again not surprisingly, that § 3617 was implicated by a claim that plaintiffs "were denied a loan because of the racial composition of the neighborhood in which the home was located." 408 F.Supp. at 498.

▮ The government's allegations in the case at bar stand in stark contrast to cases such as these. Defendant's specific conduct, as alleged in ¶ 11(a)–(1), recite nothing more than a series of skirmishes in an unfortunate war between neighbors. There is no indication in any of these allegations that defendant Weisz was feuding with the Cronins

because Weisz was Jewish and the Cronins were Roman Catholic. For all that appears from the complaint's factual allegations, Weisz was offended by the Cronins' conduct, not by their faith. For all that appears, Weisz would have been just as offended by the Cronins' alleged offensive behavior, public intoxication, basketball pole, trespass upon Weisz's property and harassment of her children if the Cronins had also been Orthodox Jews; or for that matter, Episcopalians, Baptists, Mohammedans, Buddhists, agnostics, or atheists.[1]

My conclusion that the government's allegations do not make out a claim for religious discrimination under the FHA is not affected by the particular allegations that Weisz expressed surprise to Yeshiva University, Carol Cronin's employer, that the University would hire non-Jews; or that Weisz placed an advertisement listing the Cronins' home for sale in *The Jewish Press* in order to harass them. While these allegations add Jewish elements into the narrative, they reflect nothing more than the defendant's methods of making life miserable for the Cronins. They do not support an inference that Weisz wished to make life miserable for the Cronins because they were Roman Catholics.

I recognize that on a Rule 12(c) motion, the nonmoving party is entitled to the benefit of all inferences that may reasonably be drawn from the allegations of fact. However, the factual allegations must support the inference sought to be drawn. Trial judges customarily instruct jurors thus: "An inference is the deduction or conclusion that reason and common sense prompt a reasonable mind to draw from facts which have been proven from the evidence. Not all logically possible conclusions are legitimate or fair inferences. Only those inferences to which the mind is reasonably led or directed are fair inferences from direct or circumstantial evidence in the case."[2] Nothing in the factu-

al allegations at bar leads or directs the mind to an inference that Weisz, in her behavior toward the Cronins, was motivated by the Cronins' religious faith. While it is logically possible that this particular animus existed in Weisz's mind, that is insufficient in law.

I conclude that the conduct alleged in the complaint does not fall within § 3617 of the FHA. I am entirely unimpressed by the Cronins' apparent success in persuading somewhere at HUD to the contrary.

Accordingly defendant's Rule 12(c) motion will be granted and the complaint dismissed. In that circumstance, the Cronins' motion to intervene in the action will be denied as moot.

## CONCLUSION

Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) is granted. The Clerk of the Court is directed to dismiss the complaint.

The motion on behalf of Carol Cronin, John Cronin, Bruce Cronin, Sean Cronin, and Suzanne Cronin Hammond to intervene in the action, pursuant to Rule 24(b)(2), is denied as moot.

It is SO ORDERED.

---

1. I use the adjective "alleged" in this paragraph because I am not concerned in this analysis with the truth or falsity of Weisz's complaints against the Cronins. Weisz's charges against the Cronins may have been entirely false; indeed, the complaint alleges that some of her complaints were false. But the truth or falsity of the charges does not bear, one way or the other, upon the government's conclusory allegation that Weisz was motivated by religious animus.

2. This language is taken from this Court's charge in *Eich v. Metro–North Commuter Railroad*, 88 Civ. 1720, 1989 WL 120337 (S.D.N.Y. October 2, 1989) at Tr. 627.