Tami OHANA and Edith
Stern, Plaintiffs,

v.

180 PROSPECT PLACE REALTY CORP.;
Allan Fogelson; Richard Pilson; Ruth
Jackson; and Gloria Phelps, Defendants.

No. 94–CV–5816 (FB).

United States District Court,
E.D. New York.

March 11, 1998.

Tami Ohana and Edith Stern, Hollywood, CA, pro se.

Ruth Jackson, Brooklyn, NY, pro se.

Gloria Phelps, Brooklyn, NY, pro se.

Richard J. Pilson, Berliner & Pilson, New York City, for 180 Prospect Place Realty Co., Allan Fogelson and Richard Pilson.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

Plaintiffs Tami Ohana and Edith Stern, *pro se*, commenced this action against, *inter alia*, Ruth Jackson ("Jackson") and Gloria Phelps ("Phelps"), seeking monetary damages against these defendants for their alleged interference with plaintiffs' rights under § 3617 of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), and an implementing regulation, 24 C.F.R. § 100.400. Presently before the Court are Jackson's and Phelps' motions to dismiss plaintiffs' complaint, as amended, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. The Court denies their motions. In so doing, the Court holds that the FHA not only protects individuals from discrimination in the acquisition of their residences because of race, color, religion, sex, familial status, or national origin, but also protects them from interference by their neighbors for such discriminatory reasons in the peaceful enjoyment of their homes.

### BACKGROUND

Plaintiffs' amended complaint alleges the following pertinent facts: On December 12, 1991, plaintiffs moved into Apartment 4D at 170 Prospect Place, Brooklyn, New York.[1] From that day forward, until they moved out the following December, Jackson and Phelps, their not-too-friendly neighbors, engaged in a series of discriminatory acts against them based upon plaintiffs' race (Hebrew), religion (Jewish), and national origin (Middle Eastern).[2]

These acts took the form of racial and anti-Jewish slurs and epithets, threats of bodily harm, and noise disturbances. For example, on the day after plaintiffs moved in, Phelps "stalked plaintiffs in front of their [apartment] door and said she is 'unhappy that whites moved next door.'" On another occasion, Jackson "yelled loudly 'I'll have the motherf—ker Jews out.'" At times, Phelps and Jackson also banged on walls and hammered late at night while shouting their slurs and epithets. Specifically, on at least two occasions, Jackson "hammer[ed] loudly while hollering 'Jews move,' [at] around 2:00 a.m. and 2:30 a.m., startling [plaintiffs] awake." On another occasion, Jackson "forced herself into [plaintiffs'] apartment and put her fist in plaintiff Stern's face saying she had 'already hit the landlord.'" In another incident, Jackson "accosted plaintiff Stern in the hall … and shouted at plaintiff Stern that 'she was not black enough to live in the building' and that she'll 'send an Arab to kill her.'"

Visitors to Jackson's and Phelps' apartments participated in this type of abusive activity. For example, plaintiffs allege that "defendant Jackson with other tenants from 170 Prospect Pl., and visitors to her Apt. (# 3D) directed threats of bodily harm and anti-Jewish epithets at plaintiffs, intentionally done during the Jewish holiday of Purim."[3]

### DISCUSSION

**A. Standard for a Rule 12(b)(6) Motion to Dismiss**

A complaint should only be dismissed pursuant to Rule 12(b)(6) "if it appears that [the

---

1. Plaintiffs allege that they moved into the apartment on December 12, 1992; however, based upon a close reading of the amended complaint, which alleges discriminatory acts throughout 1992, while they were living in the apartment, it appears that plaintiffs actually moved into the apartment in December of 1991.

2. Plaintiffs also claim sexual discrimination; however, they do not allege specific factual allegations to support that claim.

3. Plaintiffs have also joined as defendants Allen Fogelson, the owner of the premises, 180 Prospect Place Realty Corp., the management company, and Richard Pilson, Fogelson's attorney. Their theory of liability against Fogelson and the management company is, *inter alia*, that they had notice of the actions taken by Phelps and Jackson and failed to intervene. Liability in respect to Pilson is predicated upon their claim that he threatened to have plaintiffs evicted based upon false claims for discriminatory reasons. None of these defendants have moved to dismiss.

plaintiffs] can prove no set of facts, consistent with [their] complaint, that would entitle [them] to relief." *Electronics Communications Corp. v. Toshiba America Consumer Prods., Inc.*, 129 F.3d 240, 242–43 (2d Cir. 1997). Furthermore, "the court must accept as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 63. A *pro se* complaint is held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### B. The Fair Housing Act

■ The United States Supreme Court has noted that the FHA is "a comprehensive open housing law." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).[4] The purpose of the FHA, as expressed by Congress, is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Thus, it is intended to promote "open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos, of racial groups whose lack of opportunities the Act was designed to combat." *Otero v. New York City Housing Auth.*, 484 F.2d 1122, 1134 (2d Cir.1973). In order to achieve its purpose, the provisions of the FHA are to be construed broadly. *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211–12, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). Consistent with its broad reach, the FHA provides for both private and governmental rights of action. *See* 42 U.S.C. §§ 3612–3614.

42 U.S.C. § 3617 is the section that triggers liability under the FHA. It states:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

Section 3603 consists of definitions and exemptions with respect to the sale and rental of dwellings. Section 3604 prohibits discrimination on the basis of race, color, religion, sex, familial status, and national origin, in the sale or rental of housing, including the terms and conditions of sale or rental, the provision of services in connection with a sale or rental, the availability of dwellings for sale or rental, and advertisements for sale or rental. It provides, specifically, under subdivision (a), that it is unlawful "to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." Section 3605 prohibits discrimination in "real estate-related transactions," including the making of loans for the purchase of a dwelling. Finally, § 3606 prohibits discrimination in the provision of brokerage services.

■ The Court must determine whether the viability of plaintiffs' § 3617 claim depends upon whether they possess viable claims under §§ 3603–3606. The District Court for the Southern District of New York has recently noted that "[t]he necessity of a nexus between § 3617 and the sections enumerated therein is not free from doubt." *United States v. Weisz*, 914 F.Supp. 1050, 1054 (S.D.N.Y.1996). As Judge Haight points out in *Weisz*, the issue has been broached, but not decided, by the Sixth and Seventh Circuits. *Id.; see Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 347 n. 4 (6th Cir.1994) ("for the purpose of this opinion we will assume, with-

---

4. In so noting, the Court distinguished the FHA from the more limited sweep of 42 U.S.C. § 1982, which provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." *Jones*, 392 U.S. at 413. While white citizens have standing under § 1982, *see Puglisi v. Underhill*

*Park Taxpayer Assoc.*, 947 F.Supp. 673, 683 (S.D.N.Y.1996) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (similarly interpreting § 1981)), the FHA's " 'potential for effectiveness ... is much greater than (§ 1982) because of the sanctions and the remedies that it provides.' " *Jones*, 392 U.S. at 415 n. 19.

out deciding, that the plaintiffs' § 3617 claim does not depend upon the validity of their § 3604(f) claim."); *Metropolitan Hous. Dev. Corp. v. Arlington Heights*, 558 F.2d 1283, 1288 n. 5 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978) ("We decline to decide whether section 3617 can ever be violated by conduct that does not violate [ §§ 3603, 3604, 3605 or 3606]."); *but see Smith v. Stechel*, 510 F.2d 1162, 1164 (9th Cir.1975) ("Section 3617 does not necessarily deal with a discriminatory housing practice, or with the landlord, financier or brokerage service guilty of such practice. It deals with a situation where no discriminatory practice may have occurred at all because the would be tenant has been discouraged from asserting his rights...."); *Evans v. Tubbe*, 657 F.2d 661, 663 n. 3 (5th Cir.1981) ("The defendant Tubbe's alleged conduct is arguably within the prohibitions of both §§ 3604(a) and 3617."); *Sofarelli v. Pinellas County*, 931 F.2d 718, 722 (11th Cir. 1991) ("We find that Sofarelli may be able to prove a set of facts *** which would clearly constitute coercion and intimidation under § 3617."). Judge Haight's research caused him to conclude that "[t]he Second Circuit does not appear to have addressed the issue." *Weisz*, 914 F.Supp. at 1054.

The Second Circuit has, however, commented in *Frazier v. Rominger*, 27 F.3d 828 (2d Cir.1994), that "[s]ection 3617 prohibits the interference with the exercise of Fair Housing rights *only* as enumerated in [ §§ 3603, 3604, 3605, or 3606], which define the substantive violations of the Act." *Id.* at 834 (emphasis supplied). Taken at face value, this suggests that plaintiffs, once having secured their housing, have no right under the FHA to be free from interference with the peaceful enjoyment of their home by one not associated with its sale or rental.

At issue in *Frazier*, however, was the discrete question of whether a landlord's refusal to rent, which would clearly be cognizable under § 3604(a), could serve, simultaneously, as a separate § 3617 claim because it would also, perforce, constitute "interference" un-

der § 3617. As the court pointed out, "under this theory, every allegedly discriminatory denial of housing under § 3604(a) would also constitute a violation of § 3617 in that the denial 'interfered' with the prospective tenant's Fair Housing Act rights." *Id.* at 834. Consequently, the court "[d]eclin[ed] to believe that Congress ever intended such a statutory overlap" and concluded, therefore, "that the plaintiffs' sole remedy in this case existed in their § 3604(a) cause of action." [5] *Id.*

Unlike *Frazier*, plaintiffs do not appear to have a claim against the defendants bottomed on a violation of any of the substantive provisions of §§ 3603–3606. The closest nexus would be that provision under § 3604(a) barring practices which have the effect of making dwellings unavailable on the basis of a person's protected status. However, this proscription appears to relate to activities in the course of the underlying rental or sale of the premises, or actions that would preclude access to or actual possession of one's property, *see, e.g., Evans*, 657 F.2d 661 (barring access to property by erection of metal gate), rather than actions that would interfere with the enjoyment of a person's property. The question remains, therefore, whether § 3617 can ever serve as a separate basis for an FHA claim where there is no predicate for liability under any of the statute's specifically referenced enumerated substantive provisions. A number of district courts have held that it can, and despite the strictures and seemingly preclusive tone of its language, a careful reading of *Frazier* suggests that the Second Circuit agrees.

Most of the district court cases that have recognized such a separate substantive basis for § 3617 liability come from the Northern District of Illinois, including *Stirgus v. Benoit*, 720 F.Supp. 119 (N.D.Ill.1989) (firebombing of plaintiff's house) and *Stackhouse v. DeSitter*, 620 F.Supp. 208 (N.D.Ill.1985) (firebombing of plaintiff's car). *See also Cass v. American Properties, Inc.*, 1995 WL 132166 (N.D.Ill. Feb.27, 1995) (interference

---

5. It would appear that the only realistic purpose that could be served by allowing § 3617 to serve as a separate claim when the claim is covered under one of the enumerated sections would be

to obviate the statute of limitations applicable to §§ 3603–3606. *See, e.g., New York ex rel. Abrams v. Merlino*, 694 F.Supp. 1101, 1103 (S.D.N.Y. 1988).

with a party's aid or encouragement of others' enjoyment of fair housing rights); *Seaphus v. Lilly,* 691 F.Supp. 127 (N.D.Ill.1988) (various acts of vandalism); *Waheed v. Kalafut,* 1988 WL 9092 (N.D.Ill. Feb.2, 1988) (firebombing house, banging garbage cans and screaming racial epithets). *Stirgus,* as well as *Seaphus* and *Waheed* each followed the lead of *Stackhouse* where, after observing "that it was unsettled whether § 3617 could be violated by conduct which did not also violate one of the other enumerated sections," 620 F.Supp. at 2 10, and noting that the Seventh Circuit declined to decide the question in *Metropolitan Housing,* Judge Aspen squarely held "that § 3617 may be violated absent a violation of § 3603, 3604, 3605 or 3606." Id.

In so holding, Judge Aspen adopted the *dicta* of the District Court of the Southern District of Ohio in *Laufman v. Oakley Building & Loan Co.,* 408 F.Supp. 489, 497–98 (S.D.Ohio 1976), that "reading § 3617 as dependent on a violation of the enumerated sections would render § 3617 superfluous." *Stackhouse,* 620 F.Supp. at 210. Embracing the time honored rule of statutory construction that "each provision of a legislative enactment is to be interpreted as meaningful and not as surplusage," *id.,* the court in *Stackhouse* construed the wording of § 3617 as itself indicating that a violation of §§ 3603–3606 "will sometimes, but not always be involved." *Id.* In that respect, it perceived that § 3617 makes it "unlawful to coerce, intimidate, threaten, or interfere with any person" in three different circumstances: "(1) in the exercise or enjoyment of any right protected by § 3603–3606; (2) on account of the person's having exercised or enjoyed such a right; and (3) on account of his having aided or encouraged any other person in the exercise or enjoyment of such a right." *Id.* at 210–11. The firebombing of plaintiff's automobile was, accordingly, proscribed under the second § 3617 scenario, "prohibiting coercive acts taken against persons who al-ready have exercised their rights to fair housing." *Id.* (emphasis supplied).[6]

*Stackhouse* has been cited with approval by District Courts of the Second Circuit. *See, e.g., Puglisi v. Underhill Park Taxpayer Assoc.,* 947 F.Supp. at 696 (S.D.N.Y.1996); *New York ex rel. Abrams v. Merlino,* 694 F.Supp. 1101, 1103–04 (S.D.N.Y.1988). More tellingly, it was also cited by the Second Circuit itself in *Frazier,* as were *Stirgus* and *Laufman,* as examples of situations warranting protection of individuals "from coercion, intimidation, threats, or interference in the exercise or enjoyment of [one's] Fair Housing Act rights." 27 F.3d at 833. It is at once apparent, therefore, that the court's seemingly preclusive language in *Frazier* is not to be taken literally, and that the Second Circuit does indeed recognize that a claim under § 3617 could entail circumstances not embraced under §§ 3603–3606. The underlying facts in *Frazier* simply did not constitute any such circumstance.

Moreover, a regulation promulgated under the FHA provides that the enjoyment of one's dwelling free from discrimination comes within the protection afforded by § 3617. 24 C.F.R. § 100.400(c)(2). It states, specifically, that "[t]hreatening, intimidating or interfering with persons in their *enjoyment of a dwelling* because of the race, color, religion, sex, handicap, familial status, or national origin of such persons" is prohibited by § 3617. 24 C.F.R. § 100.400(c)(2) (emphasis added). Since the reach of § 3617 is not free from doubt, this interpretation, which is a plausible construction of the statute and is compatible with Congress' expressed broad purpose in enacting the FHA, is entitled to deference. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Coalition of New York State Career Schools, Inc. v. Riley,* 129 F.3d 276, 279 (2d Cir.1997); *Perry v. Dowling,* 95 F.3d 231, 235–36 (2d Cir.1996); *Velazquez v. Legal Services Corp.,* 985 F.Supp. 323, 338–39 (E.D.N.Y.1997).

**6.** As here, *Stackhouse* was decided on the basis of the applicability of § 3617, although the court noted that it could conceivably be decided on the basis of § 3604(a) alone if the concept of "unavailability" were to receive a very broad construction. 620 F.Supp. at 211 n. 6. The Court takes a somewhat more skeptical view of the applicability of § 3604(a), *supra,* and therefore believes that resolution of the § 3617 issue is indicated. Notably, the court in *Stackhouse* stated that given its interpretation of § 3617, it did not have to find a violation of § 3604(a). *Id.*

 The peaceful enjoyment of one's home is a root concept of our society. It is obviously sufficiently pervasive to embrace the expectation that one should be able to live in racial and ethnic harmony with one's neighbors. This case is not about providing a federal judicial forum for the resolution of disputes amongst neighbors. *See Weisz,* 914 F.Supp. at 1054–55. It is simply about holding one accountable for intentionally intruding upon the quietude of another's home because of that person's race, color, religion, sex, familial status or national origin. The Fair Housing Act, with its broad range of compensatory, punitive and injunctive remedies, *see* 42 U.S.C. § 3613(c), is an appropriate means for accomplishing this salutary end, and *Frazier* need not, and should not, be construed as precluding plaintiffs' claim from being embraced by § 3617. Accordingly, plaintiffs, having already exercised their rights to fair housing, have set forth a cognizable claim under § 3617 of the Fair Housing Act against Jackson and Phelps for allegedly intentionally interfering with the enjoyment of these rights because of plaintiffs' race, religion and national origin.

### CONCLUSION

The motions by defendants Jackson and Phelps to dismiss the amended complaint are denied.

**SO ORDERED.**