Taal v. Zwirner                             CV-02-131-M    03/22/04
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Baboucar B. Taal, and
Guylaine L. Taal,
      Plaintiffs

      v.                                    Civil No. 02-131-M
                                            Opinion No. 2004 DNH 054
Patricia Zwirner,
      Defendant


                          **O R D E R**


      Pro se plaintiffs, Baboucar B. Taal and his wife, Guylaine,

filed this federal suit against several parties alleging racially

discriminatory behavior, a conspiracy to violate their civil

rights, and various violations of the Fair Housing Act.  The

original cast of defendants included Douglas P. Zwirner, his

wife, Patricia, Kim Lacey, and State Farm Mutual Automobile

Insurance Company.  The Zwirners and Taals were next-door

neighbors in Bedford, New Hampshire (the Zwirners have since

moved); Lacey still resides across the street from the Taals, and

State Farm employed Mrs. Zwirner and provided the Zwirners with

insurance coverage of some sort.

This suit was preceded by state litigation brought by Baboucar Taal against Douglas Zwirner in the New Hampshire Superior Court (Hillsborough North, Docket No. 01-C-111). Taal's claims in that case were virtually identical to those advanced here. In his state Writ, dated February 7, 2001, Taal claimed:

> For 21 months myself and my family were constantly subjected to, by defendant; threatened physical force, trespass and vandalism to property, communicated by conduct and declaration; of constant verbal threats, lewd and obscene gestures and intimidation, with the expressive purpose to terrorize and coerce us to move, interfering and violating with our civil rights and individual liberties under the United States Constitution and federal law and New Hampshire Civil Rights act, motivated by race, color and national origin. For that we seek damages of ($1+$2.1 million)[.]

That case was tried to verdict. The jury awarded Taal $2,000 in damages on a trespass count.

In this suit, the allegations are substantively identical, although they are lodged against additional defendants. The amended federal complaint asserts, in pertinent part, that:

> 4. Defendants Douglas and Patricia engaged in Racial Harassment, Intimidation, Terrorizing of myself, my wife and our children along with Trespassing on and Vandalizing of our property. We reported these acts to

2

the Bedford Police Department of literally more than 100 of these incidences.  The Zwirners and Kim Lacey colluded and conspired to give false, misleading and inconsistent statements to law enforcement agencies, hindering their efforts to stop these acts thus denying, hindering and obstructing our right of equal protection under the law.  Ms. Lacey came to State court and gave false and misleading statement under oath purposefully to obstruct and defeat our efforts in seeking justice.

5.    Between January 1999 to September 2000, the Zwirners lived next-door to us and defendant Lacey across the street on Essex Road, in Bedford.  For 21 months and more the Zwirners engaged in Racial Hara[s]sment, Intimidation Threatening and Terrorizing myself, my wife and children continuously and constantly trespassing and vandalizing our property.  Defendant Lacey while being aware of these acts enjoyed our continuous torment, talked about it to other neighbors, told investigators that she know nothing about it, despite Douglas saying that she and others were aware of what was going on.  Ms. Lacey in her deception and making false and misleading statements, told a story of the Police Chief coming to her home and told her of the department investigating a fence dispute.  The Chief of Police has stated that he has never met, talked to or gone to her house.  Ms Lacey and the Zwirner concocted another story of when they first met, only to have Douglas Zwirner not sticking to that story line, all of this done under oath.  Ms Lacey denied speaking to the Zwirners less than 24 hours before she came to testify and started to give a story about the last time they spoke being months ago, I stopped her and then she admitted that they spoke the day before.

\* \* \*

7.    The evident need to constantly give false, misleading and inconsistent statement not only show the continued deceptive efforts to defeat, hinder and

3

obstruct our right to due justice but also denied us the afforded equal rights and protection under the law. These defendants being fully aware of their actions continuously and constantly engaged in these acts, despite our communicating to them and asking them to stop. They got bolder in their actions, and at one point intimated to another neighbor that they want to "keep the neighborhood white", they would continue engage in making lewd gestures and conduct, yelling racial slurs, gesturing his middle finger, spitting and heckling all of these in front of our kids. All of these would happen every time our garage door opens and or when we are outside on our driveway playing with our kids. The Zwirner found it necessary to come back to the neighborhood even after they move out to engage in stalking and intimidation under the pretext of being invited to a birthday party that he did not know whose or what age.

Amended Complaint (document no. 14) ¶¶ 4, 5 and 7.


The complaint also alleges that State Farm, "their [the Zwirners'] employer and insurer," knew of the harassment, provided "equipment, material comfort and counsel," and "directly and indirectly participated in the conspiracy to violate and interfere with our civil rights . . . . They allowed, furnished and directed the Zwirners to take pictures, engage in computer generated harassing phone calls, using the same computers to perpetrate and concoct the conspiracy with Defendant Lacey. They

4

together engaged in violation of the exercise and or enjoyment of our rights under the Fair Housing Act." Id., ¶ 6.

State Farm filed a well-supported motion for summary judgment, and judgment was entered on the merits in its favor earlier in the case. Similarly, defendant Kim Lacey filed a well-supported motion for summary judgment and judgment was entered on the merits in her favor as well[1]. The claims asserted against defendant Douglas Zwirner in this suit were dismissed on res judicata grounds, since it is plain that those claims could have been, and in fact largely were, asserted against Zwirner in

---

[1] Although it is often difficult to tell just what plaintiffs are specifically alleging, the court determined that the gist of their complaints against Lacey was that she did not testify truthfully in the earlier state civil trial. After reviewing the submitted transcript extracts and the record, this court agreed with the state trial judge that Lacey did not, as plaintiffs allege, testify in a contradictory way about any material matter at all. No evidence was offered suggesting that she engaged in any conspiracy to deprive plaintiffs of their civil rights, and, to the extent plaintiffs were suing Lacey based upon her state court testimony, she was entitled to immunity. See Stoutt v. Banco Popular De Puerto Rico, 320 F.3d 26, 33 (1st Cir. 2003) (the common law absolute immunity of witnesses is a well-recognized limitation on constitutional as well as other torts); Watterson v. Page, 987 F.2d 1, 9 (1st Cir. 1993).

5

the state litigation that preceded this case.[2]  See In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003); Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755-56 (1st Cir. 1994) (where two suits involve the same transactions or series of transactions, a prior judgment in the first suit is conclusive as to all issues which were actually litigated or which could have been litigated).

What remains of this case, then, are the claims against defendant Patricia Zwirner.  She, too, has filed a well-supported motion for summary judgment, and, once again, plaintiffs have not offered any evidence - and the record, viewed most favorably to plaintiffs, does not suggest any - sufficient to create a genuine dispute as to material facts, or a trial-worthy issue.

---

[2]  The substance of the state Writ is set out above and raises claims of racial harassment and civil rights conspiracies, as well as claims that facially describe Fair Housing Act violations, in addition to trespass and other state law claims, at least when read liberally.  The parties have not provided much by way of procedural history of the state litigation, but it is clear from the submitted verdict form in the state case that only the trespass claim went to the jury.  Plaintiff recovered $2,000 on that claim, and unsuccessfully sought a new trial and other post-judgment relief.

To be sure, the amended complaint describes disturbing and unacceptable racial bigotry in broad and general terms guaranteed to garner attention (i.e., racial harassment, terrorizing, and vandalizing).  But, beyond broad-form and conclusory allegations, plaintiffs have produced almost nothing by way of evidence, or even descriptions of specific events, from which a reasonable jury could find for them on any asserted federal claim.  Accordingly, for the reasons discussed below, Patricia Zwirner's motion for summary judgment is also granted.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).  Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the

7

issue are supported by conflicting evidence." <u>Intern'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (citations omitted). As the Court of Appeals for the First Circuit has observed, "the evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial. Conclusory allegations, improbable inferences, and unsupported speculation will not suffice." <u>Cadle Co. v. Hayes</u>, 116 F.3d 957, 960 (1st Cir. 1997) (citations and internal quotation marks omitted). <u>See also</u> <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 444-45 (1st Cir. 1992) ("[T]hough for pleading purposes the line between sufficient facts and insufficient conclusions is often blurred, we nonetheless require that it be plotted.") (citation and internal punctuation omitted).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with <u>evidence</u> that conflicts with that proffered by the moving party. <u>See generally</u> Fed. R. Civ. P. 56(e). Consequently, while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere speculation, <u>see</u> <u>Serapion v. Martinez</u>, 119 F.3d 982, 987 (1st Cir. 1997), as well as those allegations "which have since been conclusively contradicted by [the non-moving party's] concessions or otherwise," <u>Chongris v. Bd. of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987).

## Background

Defendant Patricia Zwirner is alleged to have conspired with her husband Douglas Zwirner, her neighbor Kim Lacey, and State Farm, to deprive plaintiffs of their civil rights. When pressed for specific facts that would support such a claim, plaintiffs have consistently relied upon mere reiteration of the charge itself, unsupported accusations of unethical conduct on the part of defense counsel, and, occasionally, broad conclusory

9

statements unsupported by affidavit or other evidence.  See,
e.g., Pl.'s Obj. to Def. Zwirner's Mot. for Summ. J. (document
no. 127); Mot. Seeking Ruling of What Remains of Pls.' Case
(document no. 163); Tr., Final Pretrial Conf. (document no. 165).

While it must seem to pro se litigants that courts do not do
enough to help them present and litigate their claims, parties
opposing pro se litigants probably think courts go much too far
in bending over backwards to accommodate even meritless pro se
claims.  Any practicing attorney would likely attest to the fact
that litigating against pro se parties is far more difficult,
frustrating, expensive, and counter-productive than litigating
against their most accomplished professional colleagues.  In this
case, plaintiffs have been afforded every opportunity to produce
what evidence they can to support their legal theories.  Most
recently, plaintiffs were afforded additional time to conduct
late discovery, including taking the deposition of Patricia
Zwirner.  The time has now come to hold them to the applicable
legal standards in resolving this litigation.

The record discloses that the Taals and Zwirners bought and moved into newly constructed homes that were built closer to each other than the Zwirners expected. The Zwirners made no secret of the fact that they were unhappy with the builder about that close proximity. The Taals erected a fence between the properties and a dispute over its location quickly arose. That dispute blossomed into continuous bickering between the neighbors. A series of complaints and counter-complaints were made over the ensuing months to the local police department and, eventually, the F.B.I. Taal at one point complained to the F.B.I. that Douglas Zwirner engaged in "racial verbal and physical harassment (via gestures)" toward him. Exhibit B, Def.'s Mot. for Summ. J. (document no. 124). Investigations by the local police and the F.B.I. did not result in any official action. The F.B.I.'s records (as filed) reflect similar types of complaints by the Zwirners against the Taals: name calling, trespassing, repeated glaring at them and their children, etc. Among the few specifics offered by the Taals in the record are descriptions of golf balls being chipped onto their yard or into their pool, sticks (Taal calls them "logs") being tossed over the fence, and similar bickering nuisances.

11

Taal pressed a criminal complaint against Douglas Zwirner at one point, alleging that Zwirner criminally threatened him. Zwirner was acquitted.

**Discussion**

I.    The Conspiracy Claim - 42 U.S.C. § 1985(3).

Patricia Zwirner has filed an affidavit in which she denies being involved in any conspiracy to violate plaintiffs' civil rights. She denies vandalizing, trespassing, or racially harassing plaintiffs. She points out that she only met Kim Lacey just before she moved from Bedford in September of 2000, while the conflict between the Zwirners and Taals long preceded that acquaintance. (Defendant Zwirner and her family sold their home and moved following the conflict with the Taals.)

In opposition to Zwirner's motion for summary judgment, plaintiffs filed a videotape that they say constitutes evidence of harassment and intimidation. But, that tape shows nothing of the sort. The first portion of the tape consists of Douglas Zwirner's deposition in the state case. The remainder of the videotape (seemingly taken from Taals' home) shows a man

12

(presumably Zwirner) benignly walking by on what appears to be a public sidewalk, apparently in front of the Taals' home. It then depicts an incident during which a man (again presumably Zwirner) relaxing peacefully in his own yard. He discovers that he is being videotaped and he responds by retrieving his own video camera and taping the person (presumably Taal) who is taping him.

The tape is not evidence of harassment, or terrorizing, or vandalizing by the Zwirners. If anything, the tape documents a provocative and un-neighborly intrusion initiated by the Taals. The intrusive behavior by Taal was, unfortunately, promptly mimicked by Douglas Zwirner. Significantly, what the videotape also reveals is that the defendant here, Patricia Zwirner, interceded with her husband, obviously talking him into calming down and leading him into his home to end the confrontation - a confrontation that, by all appearances on the tape, was initiated by the Taals. So, as explained to the plaintiffs during the pretrial conference, the tape hardly constitutes evidence supportive of their claims. On the contrary, it is evidence that they, not the Zwirners, were the provocateurs, at least on this documented occasion. If there are other acts by the Zwirners

13

upon which plaintiffs are relying, no evidence has been offered to establish or describe them.

Although plaintiffs are prone to dramatic language, claiming "hundreds" of incidents demonstrating racial animosity, and asserting that "every time" they went outside they were harassed, the court has been unable to extract much by way of evidence of, or even a specific factual description of what occurred on the particular occasions underlying this suit, save for the few incidents described above, i.e., who did or said what, and when. The specific complaints reflected in plaintiffs' general statements, or as described in the various police reports filed in support of defendant's motion, reveal little more than neighbors engaged in bickering and feuding, and exchanging harsh charges.

It is, of course, unlawful for persons to conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities, or for the purpose of hindering constituted authorities from securing equal protection to all

14

persons.  42 U.S.C. § 1985(3).  There is no state action involved in this case, and, in order to establish a private conspiracy under the deprivation clause of § 1985(3), a plaintiff must show not only a racial (or other class-based invidiously discriminatory) animus behind the conspirators' actions, but also that the conspiracy is aimed at interfering with rights protected against private as well as official encroachment.  The Supreme Court has recognized only two such rights for deprivation clause purposes - the right to be free from involuntary servitude and the right of interstate travel.  See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 833 (1983).

Plaintiffs do not assert an abridgement of either right, and nothing in the record suggests the existence of factual support for such a claim.

While plaintiffs do not seem to be asserting a claim under the "hindrance clause" of § 1985(3), see generally Libertad v. Welch, 53 F.3d 428, 446-50 (1st Cir. 1995), it might be argued that they are (e.g., to the extent they suggest a conspiracy by

15

Patricia Zwirner and Kim Lacey to lie to law enforcement authorities in order to interfere with the authorities' ability to stop the alleged harassment). But once again, no adequate factual basis for such a claim can be found in this record. Lacey was apparently interviewed by law enforcement authorities, who were responding to Taal's many complaints, and said she was generally aware of a dispute between the Zwirners and Taals over a fence, but otherwise was not aware of specific confrontative incidents. Patricia Zwirner denies conspiring with Lacey or anyone else to lie to the police, denies lying herself, or testifying falsely, and denies any race-based animus. Nothing in the record suggests otherwise. At most, plaintiffs have offered some evidence that Douglas Zwirner used a "racial epithet" and made a lewd gesture, but otherwise simply assert in broad terms that "they" harassed and terrorized - but without specifics. A hindrance clause claim necessarily fails because there is no factual basis on this record from which a jury could find that the right allegedly infringed by the supposed conspiracy was a right constitutionally protected or guaranteed, or that the purpose and effect of the supposed conspiracy was to impede state officials in their efforts to secure equal protection of the

16

laws.  Id.  It is simply not enough to allege, in dramatic terms, that a conspiracy existed, or must have existed, based merely on the difference in race between unneighborly antagonists.  See Mass v. McClenahan, 893 F. Supp. 225, 231 (S.D.N.Y. 1995).

Plaintiffs have not offered any evidence of Patricia Zwirner's acts and statements, nor have they produced any other evidence from which a conspiracy to deprive them of civil rights might be found.  They seem to contend that her testimony in the state litigation is evidence of a conspiracy, but it is not.  Perhaps they also filed a videotape of the recent deposition of Patricia Zwirner as support for their claim that she somehow "lied" about matters in dispute.  But they do not identify any testimony they consider to be untruthful or that might support a conspiracy claim, nor do they offer evidence from which a jury could conclude that the unspecified testimony was untruthful, nor do they explain how any untruthful testimony might be related to a conspiracy to deprive them of constitutionally protected civil rights.  There is simply nothing in this record from which a reasonable jury could conclude, by a preponderance of the

17

evidence, that Patricia Zwirner conspired with anyone to deprive plaintiffs of any civil rights.

Indeed, there is much less here than was presented in <u>Manego v. Cape Cod Five Cents Sav. Bank</u>, 692 F.2d 174 (1st Cir. 1982). In that case, plaintiff claimed he was denied a license to operate a disco because of his race; that, within half a year after being turned down, a disco license was issued to a white applicant; that someone had set fire to his property; and that unnamed persons had uttered racial slurs. While those facts certainly warranted pursuit, plaintiff in that case, like the plaintiffs here, simply did not develop evidence that might support what in that case was an obvious suspicion. The court of appeals noted, and shared, the district judge's frustration, pointing out that Rule 56(e) placed upon the plaintiff the burden of producing evidence of the conspiracy he alleged after defendants showed that the facts upon which he relied to support his allegations were not susceptible to the interpretation he sought to give them.

18

The court is well aware that plaintiffs miss no opportunity to complain that they have been denied discovery, but the record does not support that claim either. They have had every opportunity to engage in discovery and to develop their case, but have either failed to act, or failed to act in accordance with the applicable rules of procedure, or failed to act consistently with the orders of the court.

Nevertheless, at the final pretrial conference the court again pressed Taal on just what additional discovery he thought he needed or wanted, what evidence he had his or thought might be developed, and how that evidence might tend to support his claims.[3] His answers were, again, difficult to follow, but he did state that he needed Patricia Zwirner's deposition as well as copies of e-mails between Zwirner and Lacey. The court thereupon delayed ruling on Zwirner's pending motion for summary judgment, ordered any existing e-mails to be produced, and directed Zwirner to submit to a late deposition. In addition, the court extended

---

[3] To the extent plaintiffs were seeking relief under Fed. R. Civ. P. 56(f), the request was untimely, not adequately supported, and unjustified. Nevertheless, plaintiffs were, once again, permitted to take Patricia Zwirner's deposition, obtain e-mails, and supplement their opposition to summary judgment.

19

a final opportunity to plaintiffs to submit whatever they could in opposition to the pending motion for summary judgment. They filed only a copy of Patricia Zwirner's deposition, without brief, and without identifying just what in that deposition they thought supported any of their federal claims. As in Manego, smoke alone (and there is little evidentiary smoke here) is not enough to force defendant to trial to prove that her actions were not discriminatory.

II.    The Fair Housing Act Claim.

Plaintiffs have also asserted a Fair Housing Act claim. The Fair Housing Act ("FHA") 42 U.S.C. § 3601, et seq., is intended "to provide within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. "Thus, it is intended to promote 'open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos, of racial groups, whose lack of opportunities the Act was designed to combat.'" Ohana v. 180 Prospect Place Realty Corp., 996 F. Supp. 238, 240 (E.D.N.Y. 1998) (quoting Otero v. New York City Hous. Auth., 484 F.2d 1122, 1134 (2d Cir. 1973)).

20

Although there is some disagreement among courts that have considered the point, this court will assume that the provisions of 42 U.S.C. § 3617 provide a separate and substantive basis upon which to base liability under the FHA. See, e.g., Ohana, 996 F. Supp. at 241-42 (collecting cases). Section 3617 provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title. This section may be enforced by appropriate civil action.

Section 3617 has been applied somewhat broadly to cover various forms of interference with housing rights protected by the FHA, but, of course, with due regard for competing First Amendment rights. See White v. Lee, 227 F.3d 1214, 1230 (9th Cir. 2000). Speech can amount to a violation of § 3617 only when it is "directed to inciting or producing imminent violence and is likely in fact to do so." Id. Threats of violence, coercion, and intimidation directed against individuals, however, do not qualify as advocacy, and may well constitute a violation of § 3617. Id.

21

Reviewing plaintiffs' amended complaint in the light most favorable to them, it does, in general terms, state a claim under § 3617, although it is decidedly short on facts and long on conclusions.  See generally, Ohana, 996 F. Supp. at 243.  But, at this stage, the issue before the court is not whether the amended complaint should be dismissed, but whether summary judgment should be entered in favor of Patricia Zwirner.

The difficulty for plaintiffs, once again, is that they have offered no admissible evidence, nor even described any provable facts, from which a reasonable jury could find by a preponderance that this defendant, Patricia Zwirner, coerced, intimidated, threatened, or interfered with plaintiffs' enjoyment of their home because of their race, color, or national origin.  And, the record suggests none.

To be sure, plaintiffs level broad and generalized claims of racial harassment "every day" and "hundreds of times," but, with regard to Patricia Zwirner, offer no factual descriptions of specific acts and offer no evidence.  Considering the record in the light most favorable to plaintiffs, the parties opposing

22

summary judgment, it is apparent that the only specific complaint lodged against Mrs. Zwirner is that she supposedly did not testify truthfully during the earlier state court trial - though, again, plaintiffs point to nothing that supports such a claim, or even raises a triable issue of <u>material</u> fact related to that claim. Plaintiffs have not described or offered any evidence of any specific incidents during which Patricia Zwirner said something that might reasonably be viewed as threatening, or did something that would constitute vandalism or amount to coercion, or did something that would terrify a reasonable person in plaintiffs' position or that would suggest some racial animus on her part. And, of course, Mrs. Zwirner, like all witnesses, enjoys absolute immunity from liability for her testimony at the state trial. <u>See</u> <u>Watterston</u>, 987 F.2d at 9.

Moreover, there is no evidence offered, or specific claim made, that Mrs. Zwirner engaged in any extreme or overt acts that would qualify as intimidation or coercion under § 3617. <u>See</u>, e.g., <u>Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n</u>, 208 F. Supp. 2d 896, 903-06 (N.D. Ill. 2002) (collecting cases regarding level of severity of conduct necessary to

23

constitute an FHA violation). For example, plaintiffs do not offer evidence (or assert) that defendant engaged in fire bombing their home or cars, was implicated in cross burnings, physically assaulted them, threatened to physically assault them, threw rocks through windows, fired weapons, or engaged in extreme concerted disruptive activities designed to interfere with their quiet enjoyment of their home - the types of extreme or severe conduct that courts have recognized as actionable under § 3617. At best, what plaintiffs have shown is that they were engaged in a long-standing, often immature dispute with their neighbors and, on one documented occasion of friction, they were the instigators or provocateurs, and on another Douglas, not Patricia, Zwirner uttered a racial epithet and made a lewd gesture.

As courts have generally agreed, "it seems clear enough that to bring a claim within § 3617, a plaintiff must allege conduct on the part of a defendant which in some way or other implicates the concerns expressed by Congress in the FHA. If it were otherwise, the FHA would federalize any dispute involving residences and people who live in them. Nothing in the statute or its legislative history supports so startling a proposition."

24

Id. at 904 (quoting United States v. Weiz, 914 F. Supp. 1050, 1054 (S.D.N.Y. 1996)); see also Egan v. Schmock, 93 F. Supp. 2d 1090, 1093 (N.D. Cal. 2000) (Congress did not intend § 3617 to cover any discriminatory conduct interfering with a person's quiet enjoyment of his or her home, otherwise "any dispute between neighbors of different races or religions could result in a lawsuit in a federal court under the FHA.").

That is not to say that only shockingly severe and violent conduct will meet the threshold requirements of a § 3617 claim. One can imagine a moderate level of intentional and persistent nuisance behavior, motivated by racial or religious animus, and directed at a victim over a sufficient period of time that might prove so disruptive and coercive as to warrant relief under § 3617. See, e.g., Ohana, 996 F. Supp. at 241-42. But this is not such a case, at least not on this record.

To reiterate, the pending motion is one for summary judgment, and broad-form conclusory allegations will not suffice. Facts, from which a violation could be found by a reasonable jury, must be identified if summary judgment is to be avoided.

Notwithstanding ample opportunity to do so, plaintiffs have failed to point to evidence supporting the existence of genuinely disputed material facts or a trial-worthy issue on their § 3617 claim.

While there can be little doubt that the Taals and the Zwirners did not get along, and that on at least one occasion defendant's husband, Douglas Zwirner, resorted to racial epithets and lewd gestures, that is not enough to establish an FHA claim under § 3617.  Congress did not intend the FHA to provide a remedy for every squabble, even continuing squabbles, between neighbors of different races.  Broad-form claims aside, nothing plaintiffs have presented suggests the type of conduct intended to be covered by § 3617.

As noted in Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 6 (1st Cir. 1998), subjective characterizations and perceptions of discriminatory conduct are not enough to avoid summary judgment. The "district court cannot accept, on faith, conclusory assessments by claimants that unspecified and unattributed epithets were 'derogatory' and 'denigrating,' let alone

demonstrated discriminatory intent." Id. Bare conclusory allegations, parroted without elaboration in a Rule 56 proffer, do not suffice to identify either the nature of the acts complained of, the pertinent facts, or the identity or motive of the actors. Id. at 5. "The object of [Fed. R. Civ. P. 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Id. at 6 (quoting Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1059 (7th Cir. 1994)).

There being no genuine dispute as to any material fact, and defendant being entitled to judgment as a matter of law on the undisputed facts of record, summary judgment is granted in favor of defendant Patricia Zwirner on plaintiffs' claims under the Fair Housing Act.

III. State Law Claims.

To the extent the amended complaint might be construed to assert state law causes of action, the court declines to exercise supplemental jurisdiction over those claims. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

27

## Conclusion

The court is well aware of the difficulties faced by pro se litigants as they attempt to pursue legal claims in federal court. And, mindful of those difficulties, the court has extended plaintiffs every reasonable opportunity to develop their case - perhaps to the detriment and, no doubt, substantial added expense, of defendants. At this point, however, it is clear that affording plaintiffs additional time and/or discovery in an effort to shore up their unsupported claims would prove futile. On this record, it is plain that the sole remaining defendant, Patricia Zwirner, is entitled to judgment as a matter of law on all of plaintiffs' federal claims against her.

Defendant Patricia Zwirner's motion for summary judgment (document no. 124) is granted in part and denied in part. As to the federal claims asserted against her, Zwirner is entitled to judgment as a matter of law. To the extent plaintiffs' complaint might be read to allege state law claims against Zwirner, the court declines to exercise its supplemental jurisdiction, and those claims are dismissed. The Clerk of Court

28

shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 22, 2004

cc:   Baboucar B. Taal, pro se
      Guylaine L. Taal, pro se
      Wilfred J. Desmarais, Jr., Esq.
      Russell F. Hilliard, Esq.
      Christopher J. Pyles, Esq.